Leonard D. HOFSTETTER,
Plaintiff-Respondent,

v.

UNION ELECTRIC COMPANY,
Defendant-Appellant.

No. 50343.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 25, 1986.

Motion for Rehearing and/or Transfer
Denied Jan. 27, 1987.

Application to Transfer Denied
March 17, 1987.

Richard J. Mehan, Jr., St. Louis, for defendant-appellant.

Richard E. Schwartz, St. Louis, for plaintiff-respondent.

CRANDALL, Judge.

Plaintiff, Leonard D. Hofstetter, was employed by Daniel International Corporation (Daniel) as an operating engineer. Daniel was the independent general contractor of defendant, Union Electric Company, and was engaged in the construction of Union Electric's Callaway nuclear power plant. Plaintiff was injured when he fell while attempting to step down from a "ringer" crane which was being erected for use on the job. Plaintiff brought this action against Union Electric for bodily injury under an inherently dangerous activity theory. The case was tried to a jury. The jury returned a verdict in favor of plaintiff and assessed his total damages at $500,000.

The jury also apportioned fault at 51 percent Union Electric and 49 percent plaintiff. Union Electric appeals from the judgment of the trial court, entered pursuant to the jury verdict, in the amount of $255,000. We reverse.

At the time of the accident, plaintiff was helping to erect a crane for use at the construction site. Union Electric paid for and owned the crane. Pursuant to its contract with Union Electric, Daniel had procured the crane and was responsible for its use on the job.

Plaintiff was in the process of converting the crane from a "crawler" to a "ringer" type. In order to accomplish this, it was necessary first to disassemble and then to reassemble the crane. Briefly, the assembly process involved the following steps: (1) grading the ground; (2) driving the crane's tracks onto mats of railroad ties; (3) bolting each end of two side beams onto hydraulic pumps; (4) putting on the ring; (5) leveling off the crane by placing railroad ties under the crane and ring (called "cribbing"); and lastly (6) erecting the boom and restringing the lines.

On April 26, 1982, plaintiff was climbing down off of the crane to get a tool. Plaintiff walked down the counterweight side beam across the tracks, and stepped with both feet onto the ring. He then placed his right foot on the hydraulic jack and proceeded to step down off the ring. At this point, his foot slipped and he fell. His right foot became wedged in a space between the railroad ties. His body fell to one side, causing his leg to break. The following diagram depicts the ringer crane and the path of plaintiff's descent:

COUNTER-
WEIGHT
SIDE
BEAM

RING
SIDE
BEAM

RING

HYDRAULIC
JACK

RAILROAD TIES (CRIBBING)
& PLANKING

TRACKS

BOOM

The top of the ring was approximately five feet from the ground. At the time plaintiff fell, there were no steps in place for easy access to the platform of the ring. Although steps had been constructed, they were not in place, nor were they available, at the construction site. Rather, the steps were located at a warehouse about one-half mile from the job site.

In addition, the usual procedure in cribbing was to bolt together the railroad ties. In this instance, there were insufficient ties to go under the crane. As a result, when the ties were placed under the crane and ring, there were gaps between the ties. Although it was customary to cover these spaces with some type of planking, this was not done.

Plaintiff had informed the Daniel supervisor that both steps and planking were needed. Union Electric supervisors frequented the assembly site and were present during some of these conversations. In fact, shortly after plaintiff fell, the steps were set in place and plywood planking was installed.

Union Electric raises several points on appeal. The salient issue, raised by Union Electric in its third point, is whether the activity which caused plaintiff's injury was "inherently dangerous," with the result that Union Electric is liable for plaintiff's injury.[1] If reasonable minds could differ on that question, then it is properly a jury question.

As a general rule, the landowner who contracts with an independent contractor to do work is not liable for bodily harm caused to another by the tortious act or

---

1. The inherent danger exception, although usually applicable to cases where members of the public are injured, is equally available to an employee of a subcontractor. "The cause of action is an exception to the general rule also recognized in our cases that the employer is not ordinarily liable for the acts or omissions of an independent contractor." *Smith v. Inter-County Telephone Co.,* 559 S.W.2d 518, 523 (Mo. banc 1977).

omission of the independent contractor or of his servants. *Smith v. Inter-County Telephone Co.*, 559 S.W.2d 518, 521 (Mo. banc 1977); Restatement (Second) of Torts § 409 (1965). There is, however, a well recognized exception to that maxim if the work subcontracted involves a special or an inherent danger to others. *Id.;* Restatement (Second) of Torts § 427 (1965). If the work is considered intrinsically dangerous, then a primary, non-delegable duty is imposed upon the landowner, *Id.* (citing *Stubblefield v. Federal Reserve Bank of St. Louis*, 356 Mo. 1018, 204 S.W.2d 718, 722 (1947)). The landowner cannot relieve himself of this responsibility by casting it on the independent contractor. *Carson v. Blodgett Const. Co.*, 189 Mo.App. 120, 174 S.W. 447, 448 (1915).

To make a submissible case under the inherently dangerous activity doctrine, plaintiff must present evidence that:

> (1) performance of the contract necessarily involves some inherently dangerous activity; (2) the activity which caused the damage was reasonably necessary to the performance of the contract and was inherently dangerous; (3) the one contracting with the independent contractor negligently failed to insure that adequate precautions were taken to avoid damage by reason of the inherently dangerous activity; and (4) plaintiff's damage was a direct result of such negligence.

*Smith*, 559 S.W.2d at 523.

Specifically, what activities fall within the inherent danger exception eludes precise definition. It is clear that the landowner is liable if the work done under the contract is of a type which "necessarily presents a substantial risk of damage unless adequate precautions are taken." *Id.* It is equally clear that the landowner is not liable if the danger arises because of the negligent manner in which the independent contractor performs the job. *Id.* at 522. "The one starts with danger and requires preventive care to make safety, while the other starts with safety and requires negligence to make danger." *Id.* (quoting *Carson*, 174 S.W. at 448).

To be inherently dangerous, the work being done must, by its very nature, involve some "peculiar risk" of physical harm. A peculiar risk is differentiated from a "common risk" in that common risks are those to which persons in general are subjected by the ordinary forms of negligence which are typical in the community. Restatement (Second) of Torts § 416 comment d (1965). The theory of liability for an inherently dangerous activity is not applicable where the negligence of the independent contractor creates a new risk, not intrinsic in the work itself, which could have been prevented by routine precautions of a kind which any careful contractor would be expected to take. *See* Restatement (Second) of Torts § 413 comment b and § 427 comment d (1965). An employer of an independent contractor is not liable for the "collateral negligence" of that contractor, meaning that negligence which is unusual or foreign to the normal or contemplated risks of doing the work. Restatement (Second) of Torts § 426 comment a (1965); *see e.g.* Restatement (Second) of Torts § 427 comment d, illustrations 1 and 2 (1965).

In the present case, to say that the erection of the ringer crane is inherently dangerous does not answer the critical issue.[2] If we assume that, in general, the erection of the crane is an inherently dangerous activity, it does not necessarily follow that every act associated with that job, is per se, inherently dangerous. For example, in the context of this case, if, in the course of Daniel's performing its contract with Union Electric, the ringer crane would have given way, causing plaintiff to fall, then perhaps Union Electric would be liable to plaintiff. In this example, the injury would have arisen as a direct result of the nature of the work of erecting the crane. Plaintiff's fall would have been a "peculiar risk" of the work itself which should have been

---

**2.** Plaintiff relies on the testimony of his safety expert that erecting the ringer crane was an inherently dangerous activity. This court, however, is not bound by the conclusions of an expert witness. Simply designating the activity as inherently dangerous does not make it so.

anticipated by Union Electric. Under these proposed set of facts, Union Electric would not have been shielded from liability by Daniel.

Under the facts of the present case, however, plaintiff was injured because Daniel did not follow the rudimentary safety standards which Union Electric reasonably could expect to be carried out with proper care. *See* Restatement (Second) of Torts § 426 comment b (1965). Daniel's negligence consisted solely of the improper manner in which it did the work. This collateral negligence gave rise to a new risk, one not anticipated by Union Electric. *Id.* comment a. Plaintiff's injury resulted from the common risk of not providing steps from the five-foot high platform of the ring and from not setting planks over the railroad ties, rather than from some special hazard intrinsic to the work itself.

 Plaintiff's cause of action does not fall within the inherent danger exception to the general rule which absolves a landowner of liability for the acts of an independent contractor. To hold that the activity in this case falls within the exception would be to hold that all the construction work is *per se* inherently dangerous. Whether or not this is a socially desirable or economically feasible result is a legislative decision best left to that body constitutionally empowered to deal with it.

In view of our disposition, it is unnecessary to consider Union Electric's other points on appeal.

The judgment of the trial court is reversed.

PUDLOWSKI, P.J., and KELLY, J., concur.