**Antonio BARBERA and Rosa Barbera, for themselves and as next friend of Giuseppe Barbera, a minor child, Plaintiffs-appellants,**

v.

**BROD–DUGAN COMPANY, the Glidden Company, Emerson Electric Company, Thomas M. Klinger, Salem–In–Ladue Methodist Church, Stinson Sales Corporation, and Stinson Manufacturing Company, Defendants-respondents.**

**No. 55079.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 21, 1989.

As Corrected April 4, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 18, 1989.

Application to Transfer Denied
June 13, 1989.

Richard E. Schwartz, James E. Parrot, St. Louis, for plaintiffs-appellants.

Robert A. Wulff, Robert J. Wulff, Paul S. Brown, Dennis E. O'Connell, St. Louis, for defendants-respondents.

GARY M. GAERTNER, Judge.

Plaintiffs-appellants Antonio and Rosa Barbera appeal from trial court's ruling dismissing several counts of their petition in personal injury and products liability action. On appeal appellants urge this court to recognize a loss of parental consortium action, heretofore not cognizable in Missouri, and overrule the trial court's dismissal of a claim for loss of parental consortium brought on behalf of their son Giuseppe. Appellants also challenge the trial court's dismissal of their action against the landowner and its agent. Appellants argue that painting at a height of 28 feet is an inherently dangerous activity and therefore the general rule precluding liability of a landowner where he hires an independent contractor does not apply. We affirm.

Ward Painting Company (Ward) employed Antonio Barbera as a union painter. Salem–in–Ladue Methodist Church (Salem) contracted with Ward to paint the exterior of its church building. Salem entered into the contract with Ward through one of its trustees, Thomas M. Klinger. On May 11, 1987, Antonio Barbera was painting the exterior of a window frame of the church building at a height of approximately 28 feet. Barbera was standing on an extension ladder which was supported by an

"airplane pick"[1] using a bridging method. Barbera thereafter fell from the ladder striking his neck on the airplane pick during the fall. The fall crushed Barbera's C-5 vertebra resulting in quadriplegia and other injuries.

Antonio Barbera brought a negligence action against Salem and Klinger, and also asserted a products liability claim against Emerson Electric Company, manufacturer of the ladder, Brod–Dugan Company, retailer of the ladder, Stinson Manufacturing Company, manufacturer of the airplane pick, Stinson Sales Corporation, distributor of the airplane pick, and the Glidden Company, retailer of the airplane pick. Rosa Barbera sued all respondents for loss of consortium. Antonio and Rosa Barbera brought an action on behalf of Giuseppe Barbera, their paraplegic son, for loss of parental consortium against all respondents. Upon motions by respondents, the trial court dismissed the loss of parental consortium claim as to all respondents. The trial court also dismissed all counts against Salem and Klinger.

█ Appellants first seek to persuade this court to recognize a cause of action for loss of parental consortium and depart from the law established in *Bradford v. Union Electric Co.*, 598 S.W.2d 149 (Mo. App., E.D.1979). In *Bradford* this court considered the issue and affirmed the trial court's dismissal of the plaintiff's petition based upon a lack of precedential support or statutory basis. Appellants argue that there is a growing trend in the law to recognize a loss of parental consortium claim. *See Hibpshman v. Prudhoe Bay Supply, Inc.*, 734 P.2d 991, 997 (Alaska 1987); *Dearborn Fabricating & Engineering Corp. v. Wickham*, 532 N.E.2d 16, 17 (Ind.Ct.App.1988); *Audubon–Exira Ready Mix, Inc. v. Ill. Central Gulf Railroad*, 335 N.W.2d 148, 151 (Iowa 1983); *Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 413 N.E.2d 690, 696 (1980); *Berger v. Weber*, 411 Mich. 1, 303 N.W.2d 424,

427 (1981); *Hay v. Medical Center Hosp.*, 145 Vt. 533, 496 A.2d 939, 946 (1985); *Ueland v. Reynolds Metals Co.*, 103 Wash.2d 131, 691 P.2d 190, 195 (1984); *Theama v. City of Kenosha*, 117 Wis.2d 508, 344 N.W. 2d 513, 522 (1984); *Kelly v. T.L. James Co.*, 603 F.Supp. 390, 393 (W.D.La.1985) (applying general maritime law).

However, twenty-four jurisdictions in addition to Missouri have rejected such a claim. *See Jeune v. Del E. Webb Constr. Co.*, 77 Ariz. 226, 269 P.2d 723, 724 (1954), *overruled on other grounds, City of Glendale v. Bradshaw*, 108 Ariz. 582, 503 P.2d 803, 805 (1972); *Lewis v. Rowland*, 287 Ark. 474, 701 S.W.2d 122, 124–25 (1985); *Borer v. Amer. Airlines, Inc.*, 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858, 866 (1977) (en banc); *Lee v. Colo. Dept. of Health*, 718 P.2d 221, 233–34 (Colo.1986) (en banc); *Zorzos v. Rosen*, 467 So.2d 305, 307 (Fla.1985); *W.J. Bremer Co. v. Graham*, 169 Ga.App. 115, 312 S.E.2d 806, 808 (1983); *Halberg v. Young*, 41 Haw. 634, 646 (1957); *Green v. A.B. Hagglund & Soner*, 634 F.Supp. 790, 796 (D. Idaho 1986) (applying Idaho law); *Hearn v. Beelman Truck Co.*, 154 Ill.App.3d 1022, 107 Ill.Dec. 926, 927, 507 N.E.2d 1295, 1296 (1987); *Schmeck v. City of Shawnee*, 231 Kan. 588, 647 P.2d 1263, 1266–67 (1982); *Durepo v. Fishman*, 533 A.2d 264, 264–65 (Me.1987); *Salin v. Kloempken*, 322 N.W.2d 736, 737 (Minn.1982); *Hoesing v. Sears, Roebuck & Co.*, 484 F.Supp. 478, 479 (D.Neb.1980) (applying Nebraska law); *General Elec. Co. v. Bush*, 88 Nev. 360, 498 P.2d 366, 371 (1972); *Russell v. Salem Trans. Co.*, 61 N.J. 502, 295 A.2d 862, 864 (1972); *DeAngelis v. Lutheran Med. Ctr.*, 84 A.D.2d 17, 445 N.Y.S.2d 188, 192 (1981), *aff'd*, 58 N.Y. 2d 1053, 462 N.Y.S.2d 626, 627, 449 N.E.2d 406, 407 (1983); *Ipock v. Gilmore*, 85 N.C. App. 70, 354 S.E.2d 315, 317 (1987); *Morgel v. Winger*, 290 N.W.2d 266, 267 (N.D.1980); *Sanders v. Sinai Hosp.*, 21 Ohio App.3d 249, 487 N.E.2d 588, 597 (1985); *Norwest v. Presb. Intercomm. Hosp.*, 293 Or. 543, 652 P.2d 318, 331 (Or.1982); *Steiner v. Bell*

---

1. Although we have no record to assist us in defining an airplane pick, appellants' counsel stated at oral argument that an airplane pick is a device used to support ladders situated on uneven ground. The term is apparently derived from the airplane pick's similarity in appearance to airplane wings.

*Tel. Co.,* 358 Pa.Super. 505, 517 A.2d 1348, 1357 (1986), *aff'd,* 518 Pa. 57, 540 A.2d 266 (1988); *Turner v. Atlantic Coastal Line Ry. Co.,* 159 F.Supp. 590, 590 (N.D.Ga. 1958) (applying South Carolina law); *Still v. Baptist Hosp., Inc.,* 755 S.W.2d 807, 815 (Tenn.Ct.App.1988); *Graham v. Ford Motor Co.,* 721 S.W.2d 554, 555 (Tex.Ct.App. 1986). For the reasons stated below we decline to deviate from our holding in *Bradford* and continue to follow the prevailing view of those jurisdictions that have addressed the question.

Various rationales have been espoused by the jurisdictions rejecting loss of parental consortium claims. The underlying difficulty is the intangible nature of the child's loss. The loss of spousal consortium action originated primarily to compensate the spouse of a negligently injured person for loss of sexual relationship but has been broadened to include loss of care, society, and companionship. Although the spousal and parental consortium claims contain common elements, the elements absent from the child's claim are significant.

An additional concern expressed by several courts is a threat of double recovery. A jury may compensate the child for lost economic support through an award to the parent and indirectly factor in a child's emotional loss through the parent's award. As to the child's claim for the parent's loss of earnings, we believe the injured parent recovers on his own claim for loss of earnings, and, when compensated therefor by recovery, this presumably fulfills the child's expectation of participation therein as a family member. Also arising from the recognition of such a claim is the possibility of conflicts within the family regarding settlements and apportionment of lump sum damage awards.

A primary concern to many courts has been the increased social burden through multiplication of litigation. Realistically the burden of paying damage awards will be borne by the public generally through increased insurance costs. Finally, many jurisdictions agree that the question is one of public policy that should be left for the legislature. To the extent that the legislature has recognized a child's loss of parental consortium in a wrongful death statute but has not recognized the child's loss when the parent is injured, we believe this strongly suggests the the legislature has deliberately chosen not to create such an action.

■ Appellants also attack the dismissal of the loss of parental consortium claim on several constitutional grounds. Appellants argue that the refusal to recognize an action for loss of parental consortium violates equal protection in that it treats similarly situated parties differently for no rational reason. Appellants first assert that said refusal invidiously discriminates between children and spouses of those who are injured because Missouri recognizes a spouse's claim for loss of consortium. We believe that there are significant differences between the parent-child relationship and the spousal relationship which undermine appellants' similarly situated premise. Secondly, a number of rational bases, mentioned above, support different treatment.

■ Appellants also argue that rejection of the loss of parental consortium claim discriminates between the children of injured parents and the children of parents that have died. The Missouri wrongful death statute permits the child of a deceased person to recover against the tortfeasor. RSMo § 537.080 (1986). The statute also allows recovery by the spouse or parents of the deceased but only one class of parties, *i.e.* spouse, parent, or child, may bring the action. Thus the children who recover under the wrongful death statute are members of a larger statutory class and there is but a single recovery on behalf of all beneficiaries.

Appellants next assert that rejection of the claim for loss of parental consortium discriminates between parents who can recover for loss of consortium of an injured child and children who cannot recover for the loss of their parent's consortium. The premise of appellants argument is defective, for Missouri does not recognize an action for loss of a child's consortium. Rather the parents' recovery for an injury to their child is limited to medical expenses

incurred and loss of services or earning capacity of the child. *See Wilson v. Lockwood,* 711 S.W.2d 545, 554 (Mo.App., W.D. 1986).

■ Appellants final constitutional argument derives from our state constitution. Article I, Section 14 of the Missouri Constitution provides: "That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay." Appellants argue that Guiseppe Barbera is a person within the meaning of the constitution and that he has suffered an injury by virtue of his father's injuries. Appellants assert, therefore, that the court's refusal to recognize an action for loss of parental consortium constitutes a violation of the open court's clause by denying their son a remedy for his injury. We do not construe the open courts clause as the basis for creating rights, remedies or new causes of action. Rather, it protects citizens in enforcing rights already recognized by law. *Schulte v. Missionaries of La Salette Corp.,* 352 S.W.2d 636, 641 (Mo.1961), *overruled on other grounds, Abernathy v. Sisters of St. Mary's,* 446 S.W.2d 599, 606 (Mo. banc 1969).

In summary, we do not doubt the magnitude of the loss sustained by the Barbera family in this tragic occurence. We conclude however, based on our own precedent in *Bradford* and other policy considerations, that a new cause of action on behalf of a child for the loss of parental consortium should not be recognized. Appellants first point is denied.

■ Appellants next argue that the trial court erred in dismissing their action against Salem. Salem hired Ward as an independent contractor to perform the task of painting the church building. Generally, one who contracts with an independent contractor to perform work is not liable for bodily injury caused by the contractor or one of its employees. *Smith v. Inter-*

*County Telephone Co.,* 559 S.W.2d 518, 521 (Mo. banc 1977); *Hofstetter v. Union Electric Co.,* 724 S.W.2d 527, 529–30 (Mo. App., E.D.1986). However, if the work to be performed under the contract involves a peculiar unreasonable risk of physical harm or inherently dangerous activity,[2] the landowner employing the independent contractor may be liable for the contractor's negligence if the landowner fails to insure proper safety precautions were taken to avoid damage that might result from the activity. *Hofstetter,* 724 S.W.2d at 530. Appellants argue that the work to be performed under the contract between Salem and Ward involved an inherently dangerous activity thereby placing a duty on Salem to take adequate safety precautions.

The determinative issue is whether painting at an elevation of 28 feet constitutes an inherently dangerous activity. Appellants contend that the determination presents a question of fact properly left for the jury. *Donovan v. General Motors,* 762 F.2d 701, 703–04 (8th Cir.1985). We view this determination as a mixed question of law and fact which may be made by a trial judge as a matter of law in certain cases. *See Hofstetter,* 724 S.W.2d at 531; *Sharkey v. Airco, Inc.,* 522 F.Supp. 646, 653 (E.D.Penn. 1981). The facts as alleged in appellants' petition present a case for disposition of the issue as a matter of law. *Id.*

As noted by this court in *Hofstetter,* determining which activities fall within the inherent danger exception presents a difficult task. *Hofstetter,* 724 S.W.2d at 530. The exception does not embrace all of the ordinary and customary dangers which may arise in the course of the contemplated work. RESTATEMENT (SECOND) OF TORTS § 413 comment b (1965). In applying the peculiar risk exception the emphasis should be on the "peculiar" character of the risk, and the need for special, unusual care. W. PROSSER & W. KEETON, THE LAW OF TORTS 514 (5th ed.1984). Several courts have narrowly construed the peculiar risk doctrine when the plaintiff is an

---

**2.** The restatement uses the term "peculiar unreasonable risk" while Missouri case law uses the term "inherently dangerous activity." *See*

RESTATEMENT (SECOND) OF TORTS § 413 (1965); *Smith,* 559 S.W.2d at 521; *Hofstetter,* 724 S.W.2d at 529–30.

employee of the independent contractor. *LaCount v. Hensel Phelps Constr. Co.*, 79 Cal.App.3d 754, 145 Cal.Rptr. 244, 252 (1978); *Elder v. Pacific Tel. & Tel. Co.*, 66 Cal.App.3d 650, 136 Cal.Rptr. 203, 206–07 (1977).[3] Furthermore, the exception does not apply where the negligence of the independent contractor creates a new risk, not intrinsic in the work itself. *Hofstetter*, 724 S.W.2d at 530. If the risk can be eliminated by routine precautions which any careful contractor could be expected to take, the landowner is not liable. *Id.*

■ We believe the facts as alleged in appellants' petition do not bring this case within the exception. The danger that Antonio Barbera was exposed to, *i.e.* falling from an elevation of 28 feet, was no more than an ordinary and customary danger of painting. This risk was nothing other than the ordinary type which would attend any painting work requiring a painter to ascend a ladder. Salem should be allowed to have relied upon Ward to take the routine precautions. Furthermore, appellants' petition alleges that the fall was caused by a defect in the equipment and the negligent manner in which it was used. These are not risks inherent to the completion of the work that Salem should have contemplated in making the contract. Rather, these risks occurred because of the collateral negligence of others, not anticipated by Salem. As stated above, a landowner is not to be held liable for the collateral negligence of an independent contractor. *Hofstetter*, 724 S.W.2d at 530. We conclude, therefore, that appellants have failed to state a claim against Salem under the inherently dangerous activity exception.

■ Appellants next argue that their petition sufficiently stated a cause of action against Salem and Klinger pursuant to the "negligent exercise of retained control" theory set forth in RESTATEMENT (SECOND) OF TORTS § 414 (1965). The theory imposes liability upon the employer who hires an independent contractor and retains control over of any part of the work, if the employer fails to exercise his control with reasonable care. *Id.* Klinger prepared the invitations to bid and specifications for the paint job which were circulated to painting contractors. Appellants further alleged that

> Klinger retained for himself under the specifications the right, power and authority to control the performance of the painting job and to instruct Ward in the way to perform same, but negligently and carelessly failed to exercise his retained right of control to require safe work practices and equipment and/or failed to instruct properly Ward and its employees in the safe manner of performance of said job and/or failed to provide them with adequate supervision of safety monitoring.

Klinger's allegedly retained control is derived from the painting specifications prepared by Klinger. In their motions to dismiss Salem and Klinger attached copies of the specifications which were not excluded by the trial court. Generally, in ruling on a motion to dismiss the trial court does not consider matters outside the pleadings. But when matters outside the pleadings are presented to and not excluded by the trial court on a motion to dismiss, it is to be treated as a motion for summary judgment. *Wehmeier v. Triplett*, 741 S.W.2d 732, 733 (Mo.App., E.D.1987). Thus we review the specifications to determine whether they support appellants' retained control theory of liability.

---

**3.** Many jurisdictions have not applied the exception where an employee of the independent contractor is injured. *See Sloan v. Atlantic Richfield Co.*, 552 P.2d 157, 159 (Alaska 1976); *Cordova v. Parrett*, 146 Ariz. 79, 703 P.2d 1228, 1231 (Ct.App.1985); *Jackson v. Petit Jean Elec. Co-op.*, 270 Ark. 506, 606 S.W.2d 66, 69 (1980); *Florida Power & Light Co. v. Price*, 170 So.2d 293, 298 (Fla.1964); *Vertentes v. Barletta Co.*, 392 Mass. 165, 466 N.E.2d 500, 502 (1984). *Conover v. Northern States Power Co.*, 313 N.W.2d 397, 404 (Minn.1981); *Donch v. Delta Inspection Servs. Inc.*, 165 N.J.Super. 567, 398 A.2d 925, 929 (1979); *Cooper v. Metro. Gov. of Nashville & Davidson Cty.*, 628 S.W.2d 30, 33 (Tenn.Ct.App. 1981); *Humphreys v. Texas Power & Light Co.*, 427 S.W.2d 324, 330 (Tex.1968); *Tauscher v. Puget Sound Power & Light*, 96 Wash.2d 274, 635 P.2d 426, 429–30 (1981) (en banc); *Peneschi v. Nat'l Steel Corp.*, 295 S.E.2d 1, 12 (W.Va. 1982); *Jones v. Chevron*, 718 P.2d 890, 898–99 (Wyo.1986).

The painting specifications are contained in a three page document which generally sets forth a description of the work to be completed, supply of equipment, materials to be used and acceptable manufacturers, and storage of materials. Klinger is only mentioned twice in the document. On page three the contractor is instructed to contact Klinger if any surface cannot be put in proper condition for finishing by customary cleaning, sanding and puttying operations. The other reference to Klinger is on page two: "Contractor shall have a competent supervisor on the job site at all times while work is in progress to whom Mr. T.M. Klinger may give instruction." Clearly these two references do not give Klinger the retained control as contemplated by the restatement. Rather the control encompassed by this rule is over methods of work or as to operative detail. RESTATEMENT (SECOND) OF TORTS § 414 comment c (1965). Surely one who employs an independent contractor may also employ a person to ascertain that the work is being done according to specifications and the employment of such person should in no way indicate that the independent contractor is being subjected to control. The specifications do not support appellants' theory nor do appellants allege any other facts to support a contention that Klinger retained control over the operative details of the work. The trial court correctly sustained respondents Klinger and Salem's motions as to the retained control theory.

In their final argument appellants assert a second, similar argument, as to respondent Klinger. Appellants argue that Klinger failed to perform his contractual undertaking to provide the painters with adequate supervision or safety monitoring. Appellants point to RESTATEMENT (SECOND) OF TORTS § 324 A (1965) as the basis for Klinger's liability. Section 324A imposes liability on a party whose negligent performance of his undertaking results in physical harm to a third person. *Id.* at comment b. Thus appellants argue that Klinger's performance of his undertaking, *i.e.* his supervision allegedly provided for in the specifications, resulted in appellant's injury.

As stated above, the specifications do not provide a basis for Klinger's retained control, nor do we find that the specifications provide a basis for the allegation that Klinger undertook to instruct, supervise or provide safety monitoring. Appellants allege no other facts placing such a duty on Klinger. Accordingly, appellants' final argument is rejected.

Having found no error in the trial court's rulings, we affirm.

GRIMM, P.J., and KAROHL, J., concur.