Donna NANCE, Individually, and as
spouse of Bobby Lee Nance,
deceased, Plaintiff–Appellant,

v.

Joseph L. LERITZ, David M. Duree,
Thomas J. Plunkert, Bernard A. Rein-
hart, and Emmett M. O'Brien, d/b/a L
& R Professional Building Partnership,
Defendants–Respondents.

No. 56699.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 13, 1990.

Lakin & Herndon, P.C., Mark T. McCloskey, St. Louis, for plaintiff-appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, John J. Horgan, Michael J. McDonnell, St. Louis, for defendants-respondents.

CRANDALL, Judge.

Plaintiff, Donna Nance, individually and as spouse of Bobby Lee Nance, deceased, brought a wrongful death action against Joseph L. Leritz, David M. Duree, Thomas J. Plunkert, Bernard A. Reinhart, and Emmett M. O'Brien, d/b/a L & R Professional Office Building Partnership. The case was tried to a jury, resulting in a verdict of $495,000 with 75 percent fault ascribed to defendants and 25 percent fault ascribed to plaintiff's decedent. Plaintiff appeals from the trial court's grant of defendants' motion for judgment notwithstanding the verdict (judgment nov). We reverse and remand with directions.[1]

Entry of a judgment nov is the equivalent of directing a verdict at the close of all the evidence. *Vinson v. Vinson*, 725 S.W.2d 121, 123 (Mo.App.1987). We review the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff, disregarding all evidence and inferences to the contrary. *Marti v. Econ-omy Fire and Casualty Co.*, 761 S.W.2d 254, 255–56 (Mo.App.1988).

Decedent was a tuckpointer hired by C.J. Milligan (subcontractor) to perform tuckpointing on the exterior of a one hundred-year-old building owned by defendants. Decedent and a co-worker attached cables to the roof of the building to raise a platform ("staging") for their work. Decedent was fatally injured when the bricks to which the staging was clamped came loose, causing the staging, decedent and his co-worker to fall 25–40 feet to the ground.

The staging equipment was provided by subcontractor and allowed tuckpointers to work on portions of the exterior wall they could not reach from a ladder. The staging provided for three different methods of suspension. The C-clamp was the only device on the work site and the device decedent used on the day of the accident. The "C-clamp" method allows a clamp to fit over the top of that part of the external wall, the parapet wall, which extends above the roof line. Cables attach to the C-clamp, and the staging hangs from the cables.

On the day decedent fell, he did not use a "tie-back" with the C-clamp. A tie-back is a rope or cable which attaches the C-clamp to a fixed object on the roof and is designed to prevent staging from falling if the C-clamp pulls loose. Decedent was also not wearing a safety harness, which is designed to prevent workers from falling if the staging falls. Tie-backs and safety harnesses were not at the work site on the day decedent fell.

Plaintiff's sole point on appeal claims the trial court erred in granting defendant's motion for judgment nov. Plaintiff claims she made a submissible case against defendants because decedent was killed while, *inter alia*, performing an inherently dangerous activity.

Generally, a landowner who contracts with an independent contractor is not

---

**1.** In addition to their motion for judgment nov, defendants filed an alternative motion for new trial. The record is silent as to the disposition of the motion for new trial. Rule 72.01(c)(1) provides that if a judgment nov is granted, the trial court shall rule on the motion for new trial and shall specify the grounds for granting or denying the motion for new trial. Because this error is not addressed by the parties on appeal we deem it waived. *See Bennett v. North Brighton Townhouses, Inc.*, 588 S.W.2d 100, 102–103 (Mo.App.1979).

liable for damages caused by the tortious acts or omissions of the independent contractor or of his employees. *Smith v. Inter-County Telephone Co.*, 559 S.W.2d 518, 521 (Mo. banc 1977). An exception lies if the work to be performed involves an inherently dangerous activity. *Id.; Hofstetter v. Union Electric Co.*, 724 S.W.2d 527, 530 (Mo.App.1986). If the work is inherently dangerous, the landowner has a non-delegable duty to insure that proper safety precautions are taken. *Smith*, at 523.

To make a submissible case under the inherently dangerous activity doctrine, plaintiff must present evidence that:

(1) performance of the contract necessarily involves some inherently dangerous activity; (2) the activity which caused the damage was reasonably necessary to the performance of the contract and was inherently dangerous; (3) the one contracting with the independent contractor negligently failed to insure that adequate precautions were taken to avoid damage by reason of the inherently dangerous activity; and (4) plaintiff's damage was a direct result of such negligence.

*Smith*, at 523.

Inherently dangerous activity is that which "necessarily causes dangers which must be guarded against" and not work that "is dangerous only by reason of negligence in doing it." *Smith*, at 522 (quoting *Carson v. Blodgett Const. Co.*, 189 Mo.App. 120, 174 S.W. 447, 448 (1915)). "The one starts with danger and requires preventive care to make safety, while the other starts with safety and requires negligence to make danger." *Id.*

The focus of this appeal is on the submissibility of plaintiff's case under the first two elements of the *Smith* test. The first issue is whether a jury could reasonably conclude that the performance of the contract necessarily involves some inherently dangerous activity.

Even the most routine construction work involves an element of risk for those who perform it. It does not follow, ipso facto, that all construction work is inherently dangerous. *Hofstetter*, at 531. The test is whether the "work necessarily presents a substantial risk of damage unless adequate precautions are taken." *Smith*, at 523. The exception does not include all of the ordinary and customary dangers which might arise in the course of work under the contract. *Barbera v. Brod–Dugan Co.*, 770 S.W.2d 318, 322 (Mo.App.1989).

In *Barbera*, a contractor employed to paint the exterior of a building was injured when he fell 28 feet from an extension ladder. The court held as a matter of law that the work did not necessarily involve inherently dangerous activity. *Barbera*, at 323. Rather, the risk involved was the ordinary type which would attend any painting work requiring the painter to ascend a ladder. *Id.*

Here, the subcontractor was also injured when he fell while working on the exterior of a building. Unlike *Barbera*, however, the work here was tuckpointing and customarily required the use of staging instead of a ground-supported extension ladder. Moreover, the staging was hung from the parapet wall of a one hundred-year-old building that was being extensively rehabilitated. A witness, expert in the field of rehabilitation of masonry structures, testified that hanging staging from this wall involved a substantial risk of damage unless adequate precautions were taken. Viewing this evidence in the light most favorable to the verdict, we conclude that it was a question of fact for the jury whether the work necessarily involved some inherently dangerous activity. *See, e.g., Floyd v. Benson*, 753 S.W.2d 945 (Mo. App.1988).

We next consider whether plaintiff made a submissible case under the second element of the *Smith* test. The question is whether the work that caused the injury was reasonably necessary to the performance of the contract and was inherently dangerous. Defendants concede that the decedent was killed while tuckpointing and that tuckpointing on staging was reasonably necessary to the performance of the contract. The inquiry is thus whether the

work that caused the death of the decedent was inherently dangerous.

■ Defendants argue that the death was not caused by inherently dangerous activity but rather by collateral negligence of the subcontractor. Collateral negligence is negligence which is unusual or foreign to the normal or contemplated risk of doing the work. *Hofstetter*, at 530. The inherently dangerous activity doctrine is not applicable where the negligence of the independent contractor creates a new risk not intrinsic to the work itself, which could have been prevented by routine precautions which any careful contractor should be expected to take. *Id.*

In *Hofstetter*, plaintiff was involved in the erection of a ringer crane. He was injured in the course of his work when he fell while attempting to step down from the crane. The court held that, assuming arguendo the erection of the crane was inherently dangerous, plaintiff could not recover because:

> Plaintiff's injury resulted from the common risk of not providing steps from the five-foot high platform of the ring and from not setting planks over the railroad ties, rather than from some special hazard intrinsic to the work itself.

*Hofstetter*, at 530–31.

In the more recent case of *Sullivan v. St. Louis Station Associates*, 770 S.W.2d 352 (Mo.App.1989), a plaintiff was involved in lowering a boiler weighing 11,500 pounds into a basement. He was injured when a chain from the forklift being used to lower the boiler snapped and hit him in the head. Experts testified that the use of a forklift and chain was not reasonably necessary to performance of the contract. Rather, the use of a crane was the preferable and perhaps only proper method of execution. The court held that, even if moving and lowering a boiler was inherently dangerous activity, plaintiff could not recover because his injury was caused by the contractor's choice of method rather than in any danger inherent to lowering a boiler. *Sullivan*, at 355.

■ It is apparent from these cases that the inherently dangerous activity doctrine is not applicable merely because some of the work under a contract involves inherently dangerous activity. In order to impose liability, the court must find that plaintiff incurred injury as a direct result of the nature of the inherently dangerous activity. *Smith*, at 523; *Hofstetter*, at 530–31; *Sullivan*, at 356.

■ Concomitantly, the fact that plaintiff's injury is caused by the negligence of the contractor does not necessarily preclude the landowner's liability. The focus is not on whether there was negligence in the performance of the activity, but whether the activity was inherently dangerous and the injury occurred as a direct result of the peculiar risk involved therein.

■ In *Smith v. Inter–County Telephone Co.*, 559 S.W.2d 518, (Mo. banc 1977), plaintiff was involved in digging trenches 6–12 feet deep. The contract between the employer and the contractor specifically provided that the contractor should shore and/or brace the trenches to prevent them from caving in. Plaintiff was injured when the walls of a trench, not shored or braced, caved in on him. The court held that the evidence was sufficient to present a factual question as to each of the elements of the inherently dangerous activity doctrine. *Id.*, at 524. It is clear, then, that liability may be imposed on the employer/landowner even though the contractor disregards a contract provision and fails to take precautions to avoid injury from performing the inherently dangerous activity.

Here, decedent was fatally injured when staging that supported him and hung from the parapet wall pulled loose and fell to the ground. The use of C-clamps is one of several approved and commonly used methods, albeit not the best, of securing staging. Although different or additional precautions could have been used, it was a question of fact for the jury whether decedent's death was directly caused by an inherently dangerous activity rather than an activity made dangerous by subcontractor's choice of method.

We therefore conclude that the trial court erred in granting defendants' motion for judgment nov. We reverse and remand with directions to reinstate the judgment in favor of plaintiff in accordance with the jury verdict.

PUDLOWSKI, P.J. and KAROHL, J., concur.