Allen **MAYS** and Sandra **Mays**, Appellants,

v.

**PENZEL CONSTRUCTION COMPANY, Respondent.**

No. 56464.

Missouri Court of Appeals, Eastern District, Southern Division.

Oct. 16, 1990.

Concurring Opinion Nov. 20, 1990.

Richard L. Hughes, St. Louis, for appellants.

F. Patrick Davis, Finch, Bradshaw, Strom & Steele, Cape Girardeau, for respondent.

HAMILTON, Judge.

Plaintiffs–Appellants, Allen and Sandra Mays, appeal a jury verdict in favor of Defendant–Respondent Penzel Construction Company (hereinafter Penzel) in a personal injury action. Allen Mays (hereinafter Mays), an employee of the subcontractor Lasley Construction Company (hereinafter Lasley), was injured while working on premises leased and occupied by Penzel. Mays based his claim on the inherently dangerous activity exception to the rule of the immunity from liability of the employer of an independent contractor. We reverse and remand for a new trial.

In July, 1982, Penzel began construction of a warehouse on land it had under a twenty-year lease. Penzel undertook the preliminary foundation and flooring work but contracted all of the steel erection work to Lasley.

Lasley constructed the steel framework for the building and then began the work of attaching metal sheeting to girders to form the walls of the warehouse. Lasley's employees worked on a scaffold attached to a superstructure built on the bed of a truck. The scaffold sections assembled on top of this structure were five to six feet wide at the base and about five feet high. The platform truck was parked alongside the girders, and Lasley employees attached metal sheeting to the girders at different levels on the scaffolding. The scaffold might be moved four to five times a day.

Lasley completed attaching metal sheeting to the two long sides of the warehouse first because that sheeting was of a uniform length and the scaffolding necessary to attach it to those two sides did not have to be as high as the scaffolding necessary at the peaked ends of the building. The long sides required five sections of scaffolding or approximately twenty-five feet assembled on top of the platform. The peaked ends required an additional two or three sections of scaffolding, making a total of thirty-five to forty feet of scaffolding.

To prevent the scaffold from leaning against the building at the peaked ends, Lasley's foreman, Marion Hill, had a guy rope attached to the top of the scaffold. The crew then attached the other end of the rope to a parked pickup truck.

On September 8, 1982, at the end of the day, Marion Hill called out for the crew on the scaffold to roll up its tools. Normally, he would then untie the guy rope and drive the pickup truck around so that the crew could put its tools in the toolbox on the truck. This time Hill failed to untie the rope. The scaffold fell away from the building carrying Mays with it. The scaffold hit Mays across the back and neck.

Mays and his wife thereafter filed a personal injury action against Penzel. On January 12, 1989, a jury found in favor of the defendant Penzel. Mays and his wife appeal.

Appellants raise two points on appeal. They contend the trial court erred (1) in giving and reading to the jury defendant Penzel's Instructions Number 12 and Number 18 and (2) in giving and reading to the jury defendant's Instruction Number 7.

Defendant's Instruction Number 12 states:

Your verdict must be for Defendant Penzel Construction Company and against Allen Mays if you believe:

First, that Lasley Construction Company used improper scaffold; and

Second, that Lasley Construction Company was thereby negligent; and

Third, the negligence of Lasley Construction Company consisted solely in the improper manner in which it performed the work; and

Fourth, said negligence created a risk of harm which is not inherent in or normal to the work; and

Fifth, Penzel Construction Company, Inc., had no reason to contemplate Lasley Construction Company's negligence when the contract was made.

Instruction Number 18 is identical except that it substitutes Sandra Mays for Allen Mays as the plaintiff. Penzel also gave Instructions Number 11 and Number 17 that states:

Your verdict must be for Defendant Penzel Construction Company unless you believe Defendant Penzel Construction Company was negligent.

Appellants contend the giving of Instruction Numbers 12 and 18 constituted error because those instructions (1) failed to hypothesize facts sufficient in law to defeat the plaintiffs' claims; (2) were erroneous attempts to use the affirmative converse form to submit only the negative of plaintiffs' submission that Lasley's work was an inherently dangerous activity and also constituted the erroneous giving of more than one true converse instruction; (3) erroneously limited plaintiffs' claims to such negligence of Lasley as defendant had reason to contemplate when the contract was made; (4) were erroneously abstract, conflicting, misleading and confusing; submitted conclusions instead of ultimate fact issues; and gave the jury a roving commission to speculate beyond the evidence about the meaning of "improper scaffold" and "improper manner" in which Lasley performed the work.

As a general rule, those who contract with an independent contractor to perform work are not liable for bodily harm caused to another by the tortious act or omission of the independent contractor. *Ballinger v. Gascosage Elec. Coop.*, 788 S.W.2d 506, 511 (Mo. banc 1990); *Smith v. Inter–County Tel. Co.*, 559 S.W.2d 518, 521 (Mo. banc 1977). The employer of an independent contractor may be held liable, however, if the contracted work involves an inherently dangerous activity. An inherently dangerous activity is one for which the "employer should recognize as necessarily requiring the creation ... of a condition involving a peculiar risk of bodily harm to others unless special precautions are taken...."

*Smith*, 559 S.W.2d at 521 (quoting *Stubblefield v. Federal Reserve Bd. of St. Louis*, 356 Mo. 1018, 204 S.W.2d 718, 722 (1947)). Inherently dangerous tasks create a danger requiring active care to counteract; these tasks must be distinguished from situations in which the danger is created by the negligent manner of performing the task. *Smith*, 559 S.W.2d at 522.

*Smith* sets forth four elements necessary for presenting a submissible case under the inherently dangerous activity theory. A plaintiff must present evidence that

(1) performance of the contract necessarily involves some inherently dangerous activity;

(2) the activity which caused the damage was reasonably necessary to the performance of the contract and was inherently dangerous;

(3) the one contracting with the independent contractor negligently failed to insure that adequate precautions were taken to avoid damage by reason of the inherently dangerous activity; and

(4) plaintiff's damage was a direct result of such negligence.

*Id.* at 523. Appellants' verdict director closely tracks *Smith's* four elements. Jury Instruction Number 10 states:

In your verdict you must assess a percentage of fault against Defendant Penzel Construction Company if you believe:

First, the erection of metal walls by Lasley Construction Company necessarily required the use of scaffold to assist in attaching the metal walls to the structural iron framework of the building and was attended with substantial danger to workers unless proper precautions were taken and was an inherently dangerous activity; and

Second, the work which Plaintiff Allen Mays was doing at the time of this incident was reasonably necessary for the erection of the metal walls and was an inherently dangerous activity unless adequate precautions were taken; and

Third, Penzel Construction Company failed to insure that adequate precautions were taken to avoid injury to Plaintiff Allen Mays in connection with Lasley

Construction Company's scaffolding activity and was thereby negligent; and

Fourth, such negligence either directly caused or directly contributed to cause damage to Plaintiff Allen Mays.

"Inherently dangerous activity" as used in this Instruction is that which necessarily presents a substantial risk of damage unless adequate precautions are taken.

As the Supreme Court noted in *Ballinger v. Gascosage Elec. Coop.*, 788 S.W.2d 506 (Mo. banc 1990), the elements in *Smith* produced confusion. *Ballinger*, 788 S.W.2d at 511. In *Ballinger* the Supreme Court recognized that in dicta *Smith* added elements that had not previously been required for a submissible case under this theory. Specifically, the third and fourth elements under *Smith* are not required for submitting a case under this theory. The *Ballinger* Court quoted the introductory note to §§ 416–29 of the Restatement (Second) of Torts, which stresses that these sections rest not upon any personal negligence of the employer, but upon vicarious liability. *Ballinger*, 788 S.W.2d at 510. The Court stated that there was no purpose in *Smith* to change the governing law by adding the third and fourth elements. *Id.* at 511. In *Ballinger*, the Court declared that the "liability attaches without any need for showing that the employer is in any respect negligent. It is purely vicarious." *Id.*

*Smith* relied on *Stubblefield v. Federal Reserve Bd. of St. Louis*, 356 Mo. 1018, 204 S.W.2d 718, 722 (1947). *Stubblefield* cited both sections 413 and 416 of the Restatement (Second) of Torts, mixing elements from unrelated sections of the Restatement.[1] *Smith* perpetuated that confusion by prescribing four elements based on language from both sections 413 and 427.

Appellants contend that *Stubblefield*, *Smith*, and *Barbera v. Brod–Duggan Co.*, 770 S.W.2d 318 (Mo.App.1989) are all cases under section 413 of the Restatement and are similar factually to this case. They assert that cases like *Hofstetter v. Union Elec. Co.*, 724 S.W.2d 527 (Mo.App.1986), and *Sullivan v. St. Louis Station Assocs.*, 770 S.W.2d 352 (Mo.App.1989), fall under sections 416 and 427 of the Restatement. Such a clear demarcation is not made in Missouri case law. As already noted, *Smith* cites to Restatement 427. *Smith* 559 S.W.2d at 522. *Smith* cites to *Stubblefield* which, in turn, cites sections from the personal liability sections of the Restatement as well as from the vicarious liability sections to describe the same exception to the rule of non-liability. Similarly, *Barbera* cites *Hofstetter*, a case Appellants contend is based on a different theory, and *Barbera* expressly recognizes that "the exception does not apply where the negligence of the independent contractor creates a new risk, not intrinsic in the work itself." *Barbera*, 770 S.W.2d at 323.

Furthermore, the owner-employer liability in both sections 413 and 427 arises out of the contractor's failure to take precautions during the work. The owner-employer is "subject to liability for physical harm caused to [others] by the absence of such precautions if the employer (a) fails to provide in the contract *that the contractor shall take such precautions,* or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions." Restatement (Second) of Torts § 413 (1965). (Emphasis added.) Owner-employer liability for physical harm caused to others arises under section 427 when the *contractor* fails "to take reasonable precautions against such danger." (Emphasis added.) Under both sections 413 and 427, even though section 413 is described as based on personal liability, the physical harm is caused by the contractor's negligence, that is, the contractor's failure to provide adequate precautions during the course of the work.

*Ballinger* returns to pre-*Smith* law and follows Restatement § 427. It describes the theory of liability for inherently dangerous activity as purely vicarious and

---

1. Section 413 is included under the topic "Harm Caused by Fault of Employers of Independent Contractors." Sections 416 and 427 are included under the topic "Harm Caused by Negligence of a Carefully Selected Independent Contractor."

states that Missouri follows the Restatement. *Ballinger,* 788 S.W.2d at 511. Sections 416–29 of the Restatement describe purely vicarious liability, particularly § 427 *Negligence as to Danger Inherent in the Work.*[2] Section 426 *Negligence Collateral to Risk of Doing the Work* is a defense to liability under § 427. Section 426 states,

> [A]n employer of an independent contractor, unless he is himself negligent, is not liable for physical harm caused by any negligence of the contractor if
>
> (a) the contractor's negligence consists solely in the improper manner in which he does the work, and
>
> (b) it creates a risk of such harm which is not inherent in or normal to the work, and
>
> (c) the employer had no reason to contemplate the contractor's negligence when the contract was made.

Restatement (Second) of Torts § 426 (1965).

Appellants base much of their argument on a theory that the inherently dangerous activity doctrine is patterned after § 413 of the Restatement (Second) of Torts and that liability is based on the third and fourth elements of *Smith,* the elements dependent upon the personal negligence of the employer of the independent contractor in failing to insure that adequate precautions were taken. In Point I.A., Appellants focus on the aberration in *Smith,* not on the settled law. Having perceived the liability as personal negligence, Appellants attempt to argue that collateral negligence by its own terms cannot be a defense to personal negligence and is not, therefore, sufficient under the law as a defense. While this may have a logical ring to it in view of the confusion generated by *Smith,* we note that *Smith* did not purport to change the law and that collateral negligence was recognized as a defense to the inherently dangerous activity theory of liability even after *Smith* enumerated its four elements. *See Zueck v. Oppenheimer Gateway Prop-*

*erties,* —— S.W.2d ——, —— No. 57015, slip op. at 5 (Mo.App.E.D. August 28, 1990); *Nance v. Leritz,* 785 S.W.2d 790, 793 (Mo. App.1990); *Barbera v. Brod–Duggan Co.,* 770 S.W.2d 318, 323 (Mo.App.1989); *Sullivan v. St. Louis Station Assocs.,* 770 S.W.2d 352, 355 (Mo.App.1989); *Hofstetter v. Union Elec. Co.,* 724 S.W.2d 527, 530 (Mo.App.1986).

■ Issuance of the *Ballinger* decision while the instant case was pending before this Court necessitates a remand because the record in this case fails to disclose which of the four elements of *Smith* the jury disbelieved in reaching a verdict in favor of the defendant. If the jury based its decision on Plaintiff–Appellants' failure to prove either the third or fourth elements, relating to the personal negligence of Penzel, their case was impermissibly decided under the inherently dangerous activity doctrine and they are, therefore, entitled to a new trial with a proper verdict director. Accordingly, we remand for a new trial. For this reason it is not necessary to review Appellant's specific objections to Instruction Numbers 12 and 18.

■ Because the issue raised in Point II of this appeal may recur in a new trial, we shall address it. In Point II Appellants contend the trial court erred in giving and reading to the jury Instruction Number 7 because that instruction (1) erroneously stated that a failure to follow governmental regulations does not in and of itself constitute negligence; (2) unduly limited the jury's ability to apply this instruction to the facts of the case in determining defendant's common law negligence; and (3) minimized the weight to be given to evidence of defendant's negligence, including the entire testimony of plaintiffs' witness Gene Litwin. Instruction Number 7 states:

> Testimony by an expert witness regarding governmental regulations or industry guidelines are [sic] offered as a basis for

---

**2.** Section 427 of the Restatement (Second) of Torts states:

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

Restatement (Second) of Torts § 427 (1965).

the expert reaching his opinions. Any failure by a party to follow these regulations or guidelines does not in and of itself constitute negligence.

After overruling an objection on the basis that Instruction Number 7 was an unnecessary cautionary instruction that commented on the relevance of particular testimony, the Court stated:

> The Court feels that it [Instruction Number 7] is necessary to advise the jury that violations of the OSHA guidelines and other guidelines of contractors' associations do not in and of themselves amount to the negligence that is required to be proved by Mr. Hughes in his case in chief, and I believe that the statements of the witness during the trial about alleged violations and those guidelines would be misleading without this limiting instruction.

Where evidence in a case is admissible for one purpose but would be improper for other purposes, it should be received, subject to a limiting instruction. *Dyer v. Globe–Democrat Publishing Co.*, 378 S.W.2d 570, 581 (Mo.1964); *Thigpen v. Dodd's Truck Lines*, 498 S.W.2d 816, 818 (Mo.App.1973). Moreover, a trial court commits reversible error if it fails to give a withdrawal instruction when evidence raises a false issue. *Harris v. Washington*, 654 S.W.2d 303, 307 (Mo.App.1983).

Contrary to Appellants' assertion, the trial court did not misstate the law. It merely limited the evidence of regulations to its relevant purpose in a case based upon the inherently dangerous activity doctrine. Appellants' expert witness, Gene Litwin, testified over a continuing objection that industry guidelines and governmental regulations placed duties on landowners or general contractors to make subcontractors perform their jobs in a safe manner. Such is not the law. The general rule is that the landowner or general contractor has no liability for the subcontractor's tortious acts or omissions. The exception is the inherently dangerous activity doctrine. While reference to regulations might be helpful to an expert in the formation of his opinion about whether a particular job is inherently dangerous, regulations should not be used to raise other theories of liability not pleaded and not the law.[3] The trial court did not err in giving a limiting instruction.

■ Penzel contends that Mays failed to present a submissible case. Where a plaintiff appeals asserting trial error, the defendant may contest the submissibility of plaintiff's case. *Grippe v. Momtazee*, 696 S.W.2d 797, 799 (Mo. banc 1985); *Robbins v. Jewish Hosp. of St. Louis*, 663 S.W.2d 341, 344 (Mo.App.1983); *R.H. Macy & Co. v. Bell*, 531 S.W.2d 58, 61 (Mo.App.1975). In reviewing the issue of submissibility, we view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. *Robbins*, 663 S.W.2d at 345.

The Appellants presented evidence to support all four elements under *Smith*. Mays testified that the scaffold had to be higher on the ends because the building peaked. He also testified that anchoring the scaffolding was necessary to keep it from falling toward the building. Marion Hill, Lasley's foreman, testified that the anchoring was necessary on the peaked ends of the warehouse, not the sides. The scaffold had to be moved frequently to complete the job. Appellants' evidence presented a jury issue on whether performance of the contract necessarily involved some inherently dangerous activity and whether the activity that caused the damage was reasonably necessary to the performance of the contract. Penzel's president and its job superintendent testified they were present on the job site and saw Lasley's workers on the scaffolding. Neither testified that he stopped the activity or that he insisted upon additional precau-

---

3. Appellants attempted, at the close of the instruction conference, to amend their pleadings based on a theory that Penzel maintained control of safety details of the scaffold work under the terms of the contract. The trial court denied leave to amend on that basis stating there would be substantial prejudice to the defendant and that plaintiffs had made no submissible case on that theory of liability.

tions. Thus, under *Smith* or *Ballinger,* Appellants presented a submissible case.

The judgment is reversed, and the cause remanded for a new trial.

SIMON, J., concurs in result in concurring opinion.

CARL R. GAERTNER, J., concurs in result in separate opinion.

SIMON, Judge, concurring.

I concur in result only. I concur in the concurring opinion of Judge Carl R. Gaertner as to Sections I, III and IV only.

CARL R. GAERTNER, Judge, concurring.

I concur in result only. This case should be retried because of the prejudicially erroneous instructions given on behalf of defendant. Although I reach the same conclusion as Judge Hamilton, I do so for different reasons.

## I.

First, a brief comment regarding Instruction No. 7. In my opinion this instruction constitutes a disparaging comment upon the evidence. Although government regulations and industry guidelines do not establish an absolute standard of care they are nevertheless admissible for the jury's consideration in determining whether or not the conduct of a party was negligent as defined by proper instructions. *See Pierce v. Platte–Clay Electric Coop., Inc.,* 769 S.W.2d 769, 772–73 (Mo. banc 1989). The cases cited by Judge Hamilton regarding evidence admissible for one purpose but improper for another or evidence raising a false issue are inapposite. The import the jury might give to such evidence is a matter for lawyer's arguments, not for a judge's comments.

## II.

I also depart from Judge Hamilton's discussion pertaining to the propriety of the verdict directing and converse instructions. The basis for the remand of this case is stated in her opinion as follows:

Issuance of the *Ballinger* decision while the instant case was pending before this court necessitates a remand because the record in this case fails to disclose which of the four elements of *Smith* the jury disbelieved in reaching a verdict in favor of the defendant. If the jury based its decision on plaintiff-appellant's failure to prove the third or fourth elements, relating to the personal negligence of Penzel, their case was impermissibly decided under the inherently dangerous activity doctrine and they are, therefore, entitled to a new trial with a proper verdict director. Accordingly, we remand for a new trial.

Rare indeed is the case where this court has granted a party a new trial because of error in a verdict directing instruction offered by and given on behalf of that same party. Plaintiffs do not ask us for relief because of their own instruction. They chose to submit their case on the theory of direct and primary negligence on the part of Penzel in failing to see that adequate precautions were taken in a subcontractor's performance of inherently dangerous work, a theory amply supported by the evidence. The fact that *Ballinger* now authorizes the submission of such case on the theory of vicarious liability does not render the submission on the theory on direct and primary negligence improper, only a greater burden than plaintiffs' need to assume.

The origin of the inherently dangerous activity doctrine rests upon the fundamental concept "that one must not authorize acts upon his property which in themselves constitute a nuisance or a menace to the lives and property of another; and it is no defense to show that the performance of this inhibited act is delegated to an independent contractor." *Salmon v. Kansas City,* 241 Mo. 14, 145 S.W. 16, 23 (banc 1912). In *Salmon* the court stated the doctrine related to instances of "injuries inflicted upon persons disconnected from the work as, for instance, passers-by on the street or adjacent property owners...." *Id.* However, the court refused to apply the doctrine in the case of injury to an employee of the independent contractor caused by the latter's negligent perform-

ance of the work, stating such a holding would be "a strange anomaly in jurisprudence." *Id.* 145 S.W. at 24.

Sixteen years after *Salmon* the question of applying the inherently dangerous activity doctrine in case of injury to an employee of the independent contractor arose again. In *Mallory v. Louisiana Pure Ice & Supply Co.*, 320 Mo. 95, 6 S.W.2d 617 (banc 1928) the Supreme Court, without overruling *Salmon,* reached a different conclusion under the circumstances of that case. Mallory, an employee of an independent contractor, was injured while excavating beneath a brick wall which collapsed. The evidence showed the owner knew of the danger from undermining the wall and agreed that it would shore-up the wall section-by-section as dirt was removed. The owner failed to do so. The general contractor took charge of the project after the excavation was partially completed and directed the independent contractor in the performance of the remaining work, including the removal of additional dirt beneath the foundation of the old wall. Neither the owner nor the general contractor took any precautions against or even warned of the recognized danger. These were the circumstances, the direct and primary negligence of the owner and general contractor in failing to carry out the duty to remedy or warn of known dangers, which caused the *Mallory* court to refuse to "apply the broad rule stated in the *Salmon* case which would inflexibly exclude the plaintiff upon the single ground that he was the servant of the contractor." *Id.* 6 S.W.2d at 626–27.

Application of the inherently dangerous activity exception to the general rule in the case of injury to an employee of a subcontractor does not appear in Missouri reported cases for almost fifty years after *Mallory.* In *Smith v. Inter–City Telephone Co.,* 559 S.W.2d 518 (Mo. banc 1977) the Supreme Court followed *Mallory* in upholding the submissibility of a case brought against an employer of an independent contractor by an injured employee of the independent contractor. The factual basis for this conclusion was similar to that in *Mallory* and the opposite of that in *Salmon,* i.e. the direct and primary negligence of the employer in failing to ensure that any precautionary measures were taken in the performance of the inherently dangerous work by the independent contractor. *Id.* at 523. The *Smith* court noted that *Mallory* was an exception to the general application of the inherently dangerous activity doctrine to members of the public who are injured, *id.* at 522, and required, as an essential element of submissibility, proof that "the one contracting with the independent contractor negligently failed to ensure that adequate precautions were taken to avoid damage by reason of the inherently dangerous activity" and that the plaintiff's injury was a direct result of this negligence.

Thus, both *Mallory* and *Smith* predicate the right of an employee of an independent contractor to recover from one who employs the independent contractor to perform inherently dangerous work upon the direct and primary negligence of the employer of the independent contractor. In *Ballinger v. Gascosage Electric Coop.,* 788 S.W.2d 506 (Mo. banc 1990) the Supreme Court tacitly overruled *Salmon v. Kansas City,* supra, and, on the authority of cases applying the inherently dangerous activity exception to injuries inflicted upon members of the public at large, held that an employer of an independent contractor was vicariously liable to the latter's employee injured as a result of the contractor's negligence in the performance of the work. Under *Ballinger* one who employs an independent contractor because of his experience and expertise in doing dangerous work becomes an absolute insurer against damages sustained by the employees of this experienced and expert contractor regardless of the employer's lack of control over the work or his efforts to see precautions are taken. The employer's liability for the tort of the independent contractor is absolute irrespective of negligence on the part of the employer. *Id.* at 511.

Irrespective of the imposition of vicarious liability upon the employer of an independent contractor, nothing in *Ballinger* precludes an injured employee from seeking recovery against the landowner or general contractor based upon their own direct

and primary negligence. There is nothing improper contained in instruction 10 given on behalf of plaintiffs' in this case. The error requiring a retrial of this case lies in instructions 12 and 18, the affirmative converse instructions given on behalf of Penzel.

### III.

An affirmative converse instruction, MAI 33.05(1), is used to submit an issue to the jury which, if found to be true, defeats the plaintiff's claim irrespective of the jury's finding on the issues submitted in plaintiff's verdict directing instruction. *Steenrod v. Klipsch Hauling Co., Inc.,* 789 S.W.2d 158, 164 (Mo.App.1990). Its function is not to submit the negative of the issues submitted by plaintiff, but to submit a fact issue extraneous to the plaintiff's submission which, if true, is dispositive. Such an instruction is couched in affirmative language, "if you believe", as opposed to the negative approach of a true converse, "unless you believe" a proposition submitted in plaintiffs' verdict director. An affirmative converse instruction which submits a factual proposition which, even if true, does not defeat the plaintiff's claim is prejudicially erroneous. *Id.* at 165.

Here, plaintiffs' theory was submitted to the jury under instructions which required the jury to find that plaintiffs' damages were caused by Penzel's negligence in failing to ensure that adequate precautions were taken in connection with the scaffolding activity. Penzel's affirmative converse instruction directed the jury to find in its favor if the jury believed Penzel had no reason to contemplate the subcontractor's negligence *when the contract was made.*

What Penzel knew or should have known when the contract was made has little bearing upon its negligence in failing to act upon the observance by its employees of the subcontractor's mounting of a leaning scaffold upon the bed of a moveable truck secured by a rope tied to a moveable pickup truck. That Penzel might not have envisioned the use of a scaffolding system so fraught with hazard does not obviate its negligence in failing to insist upon precau-

tionary measures after it had actual knowledge of the creation of such a dangerous condition. Instructions 12 and 18 constitute a misdirection of law.

### IV.

Additionally, the instructions erroneously directed the jury to return a verdict "for defendant Penzel Construction Company and against Alan [Sandra] Mays. . . ." The verdict forms prescribed in a comparative fault case, and used in this case, do not permit the jury to find in favor of one party and against another party, only to assess percentages of fault to one or to the other or to both. MAI 37.04 directs that in a comparative fault case the initial phrase of a converse instruction should read "In your verdict you must not assess a percentage of fault. . . ." In this case, by directing the jury to return verdicts for defendant and against plaintiffs, the instructions reverted to the harsh "all or nothing at all" concept of contributory negligence.

For the reasons set forth above, I concur in the reversal of the judgment and the remanding of this case for retrial.