Phyllis A. MILES and Marjorie
A. Williams, Appellants,

v.

Daniel W. DENNIS, Respondent.

WD 45973.

Missouri Court of Appeals,
Western District.

May 11, 1993.

William H. Pickett, David T. Greis, Kansas City, for appellants.

Sylvester Powell, Jr., Lance W. Lefevre, Kansas City, for respondent.

Before KENNEDY, P.J., and BERREY and SPINDEN, JJ.

SPINDEN, Judge.

Phyllis A. Miles and Marjorie A. Williams appeal a jury verdict for Daniel W. Dennis in their lawsuit against him for injuries arising out of an automobile accident. They appeal on several grounds generally related to the trial court's admitting evidence they allege was inadmissible and for permitting Dennis to assert an "improper" defense. We affirm.

The lawsuit arose out of a collision on April 13, 1985, in Kansas City between cars driven by Dennis and Miles. Williams was a passenger in Miles' car. The wreck occurred when Dennis' car suddenly pulled into the lane in which Miles' car was traveling and hit the left side of her car.

Dennis admitted that he did not look into the adjoining lane before driving his car into it. He told the jury that he was attempting to get away from a third man, who did not testify at trial, who had threatened him and the occupants of his car with a gun.

The entire incident began, according to Dennis, when he stopped for a traffic light. The driver of the car ahead of him got out of his vehicle and, carrying a gun in his waistband, walked back to Dennis' car. The gunman insisted that someone in Dennis' car had made an offensive gesture at him. He pointed the gun at Dennis and shouted, "Do you want to f___ with me now?" Dennis said he stepped on his accelerator and steered his car into the adjoining lane to get around the assailant. His car collided with Miles' vehicle.

Dennis told the jury that he was so scared that he never considered looking into the adjoining lane for oncoming traffic. He said that his only thought was to get away before the assailant shot him.

Dennis testified that after his car hit Miles' car, he and the passengers in his car got out to talk to Miles and to investigate the damage. The assailant left the scene but returned a brief while later with others and attacked Dennis and his passengers. During the fight, someone knocked Dennis against Miles' car door. Miles pushed Dennis out of the way trying to get into her car. She slipped onto one knee. Eventually, she and Williams got back into their car and locked their doors until the fight was over. After the fight, one of them gave a passenger in Dennis' car a cloth to wipe the blood off of his face. Miles and Williams then left the scene before the police arrived.

■ Miles' first point concerns the trial court's refusal to grant a mistrial because of a conversation between Dennis' attorney and a juror during trial. During a lunch break, a juror approached the attorney and asked him for a business card. The attorney responded, "I don't want to be arrogant, but I can't talk to you." The conversation ended. Miles moved for a mistrial, or, in the alternative, for a substitution of the alternate juror for the juror who approached Dennis' attorney. The court denied both requests.

Miles concedes that the attorney did not have an "evil motive," and did nothing to initiate or take advantage of the juror's approach. She argues, however, that the juror's actions demonstrated bias for the defense. The point is without merit.

The test for juror misconduct is:

Parties and jurors should avoid all appearance of evil, and if any contact motivated by improper design appears, the jury should ordinarily be discharged or a new trial granted, regardless of the existence of actual prejudice. Accidental and casual contacts with jurors are of rather common occurrence and often unavoidable. If the contact has been wholly innocent, a mistrial should not ordinarily be granted unless it can reasonably be found that there was some improper influence on the jury.... Where a juror, by some inquiry or voluntary statement has raised a question as to his impartiality, the question becomes essentially one of fact, and primarily this decision rests with the trial court.

*Sunset Acres Motel, Inc. v. Jacobs,* 336 S.W.2d 473, 479 (Mo.1960). Applying this standard to this case, we conclude that the trial court properly denied Miles' requests for a mistrial or substitution of the alternate juror.

■ Miles alleges in her second point that the trial court admitted "a miasma of irrelevant and misleading information that could have no effect but to cloud the minds of the jurors." She complains that the trial court overruled her objections to evidence of:

The fight after the collision;

Injuries to Dennis and one of the passengers in his car, Troy McCormick, from the fight and whether McCormick was still troubled by the mouth injury he suffered;

Whether Dennis was polite to Miles and Williams after the collision;

The thoughts of another passenger in Dennis' car, Gary Cooper, when he saw the assailant approach Dennis' car;

Whether Dennis' hip had a pin in it; and

Dennis' marital status.

A trial court has much discretion in determining relevancy of evidence of a collateral matter. *Smith v. Missouri Highway and Transportation Commission,* 826 S.W.2d 41, 45 (Mo.App.1992); *Boehmer v. Boggiano,* 412 S.W.2d 103, 110 (Mo.1967). "[C]onsiderable leeway is allowed even on direct examination for proof of facts that do not bear directly on the purely legal issues, but merely fill in the background of the narrative and give it interest, color, and lifelikeness." *McCormick on Evidence,* § 185 at 774 (4th ed. 1992).

■ Evidence of the fight and its surrounding details was relevant. Miles made it relevant by suggesting that Dennis and his passengers fabricated the assailant to excuse Dennis' negligence in driving into Miles' car. Details of the fight also were relevant to how Miles sustained her injuries; she claimed that her knee was injured in the accident, not the fight. Whether Dennis was polite to the women after the collision was pertinent to his state of mind at a time he now claims he feared for his life. *See Haynam v. Laclede Electric Cooperative, Inc.,* 827 S.W.2d 200, 204 (Mo. banc 1992). The intensity of the individuals' injuries was relevant to the fight's magnitude and tended to corroborate Dennis' perception that the assailant's threat was grave and life-threatening. Mention of the pin in Dennis' hip occurred when he explained why he was on crutches during the fight. Dennis was not married at the time, and although this did not bear directly on any legal issue, it helped fill in Dennis' background for the jury; the trial court did not abuse its discretion in permitting it.

■ Miles' third complaint is that the trial court repeatedly allowed evidence which Dennis intended to engender the jury's sympathy and pity. She points to the same evidence she mentioned above, and she adds to the list evidence concerning Dennis' being beaten while he was backed up against Miles' car.

We find no merit to Miles' claim. We conclude that all of the evidence, except perhaps for Dennis' marital status, was relevant. In the absence of clear prejudice, all relevant evidence should be admitted. *Weisbach v. Vargas,* 656 S.W.2d 797 (Mo. App.1983). As to Dennis' being single, we fail to discern how this created such sympathy, passion, bias or prejudice as to interfere with the jury's dispassionate, scientific assessment of the evidence.

■ Miles' fourth contention is that the trial court failed to control the trial and permitted Dennis' attorney to engage in misconduct. She complains that the attorney continued to use leading questions after the trial court sustained Miles' objec-

tions to them. She also complains that he personalized the case by referring to himself and his beliefs, personally attacked opposing counsel, and introduced evidence for the sole purpose of garnering sympathy of the jury.

■ Miles did not preserve this point for our review. She did not object at trial to these matters, except for raising frequent objections to leading questions. When she did object, the trial court ruled on the objections. Miles did not ask for any other relief. *Bunting v. McDonnell Aircraft Corporation,* 522 S.W.2d 161 (Mo. banc 1975). Nonetheless, we do not find an abuse of discretion by the trial court in its control of the trial process. The trial court did not abandon or shirk its duty to preserve order and require that attorneys and others show respect for the court and opposing counsel.

■ Miles' fifth point concerns the trial court's refusal to give the jury a withdrawal instruction. Miles wanted to remove testimony concerning the fight and injuries sustained in the fight from the jury's consideration.

■ A trial court's failure to give a withdrawal instruction when evidence raises a false issue is reversible error. *Mays v. Penzel Construction Company,* 801 S.W.2d 350, 355 (Mo.App.1990). Whether such an instruction is necessary is in the trial court's sound discretion. *State Highway and Transportation Commission v. Vitt,* 785 S.W.2d 708, 713 (Mo.App.1990).

Miles' contention is without merit. We have already determined that the cited evidence was relevant and admissible. The trial court acted properly in refusing to submit the proposed jury instruction.

■ Miles' final point is that the trial court erred in denying Miles' motion for a new trial because of the cumulative and prejudicial effects of the previously named errors. We reject the point. A judgment for error is not to be reversed unless the complainant suffered injury or prejudice. Section 512.160.2, RSMo 1986; *Reed v. Spencer,* 758 S.W.2d 736, 741 (Mo.App.

1988). We have determined that the trial court did not abuse its discretion, nor did it commit reversible error.

We affirm the trial court, therefore, on all points.

All concur.