In re the MARRIAGE OF Melanie Kay CLINTON and Steven Marshall Clinton.

Melanie Kay Clinton, Petitioner–Appellant,

v.

Steven Marshall Clinton, Respondent–Respondent.

No. 27793.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 22, 2007.

W. Edward Reeves, Ward & Reeves, Caruthersville, for appellant.

Bruce Lawrence, Ottinger, Lawrence & Pearson, L.L.C., Sikeston, for respondent.

PHILLIP R. GARRISON, Judge.

Melanie Kay Clinton ("Wife") appeals a judgment modifying the decree of dissolution of marriage to Steven Marshall Clinton ("Husband"). Wife contends that the trial court erred in reducing Husband's child support obligations, maintenance, and in changing the percentage of the children's medical insurance, non-covered medical expenses, and college expenses each party was required to pay because it was against the weight of the evidence.

Husband and Wife were divorced on October 20, 1997. There were two children born of the marriage, Marshall Clinton, born August 24, 1991, and Matthew Clinton, born December 13, 1993. In the original dissolution, Husband and Wife were awarded joint custody of the two minor children. Husband was ordered to pay Wife child support in the amount of $750 per month per child, and he was responsible for paying all of the children's college tuition, the entire cost of medical insurance and all medical expenses of the children. Husband was also ordered to pay Wife $1,000 per month for maintenance.

At the time of the dissolution, Husband was earning an annual salary of around $50,000 a year plus bonuses of around $130,000 a year, as manager of Porter–Dewitt Construction Co. ("Porter–Dewitt"). Porter Dewitt and R. Clinton Construction Co. ("R. Clinton Construction") were two closely held family corporations with Husband's father being the majority stockholder. While working for Porter–Dewitt, Husband was the highest paid manager because he was the majority shareholder's son. Husband also received significant bonuses while working with Porter–Dewitt, which were used to purchase stock in Porter–Dewitt and R. Clinton Construction on an installment plan. Husband's monthly income at the time of the dissolution, including the bonuses being paid him, was in excess of $15,000 per month while Wife was earning approximately $1400 per month.

After the dissolution, Husband stopped receiving bonuses and his father repossessed some of the company stock. In 1999, all of the stock in the two corporations, including the stock owned by Husband, was sold. Husband received $1,280,000 for the sale of stocks he owned in the corporations and another $70,000 for signing an agreement not to compete with

the buyer. His after tax proceeds from the sale were around $1,000,000.

After the sale of the corporations, Husband purchased a home with his new spouse for $312,000, and started a music business, SEMO Music Center. Husband closed SEMO Music Center in 2004. On June 14, 2004, Husband filed a motion to modify the dissolution judgment seeking to reduce his child support obligation, terminate the maintenance, and modify the percentage of the children's medical insurance and non-covered medical expenses that he was required to pay. From 2000 until the date Husband filed his motion to modify the dissolution decree, Husband paid Wife $119,000 in child support and maintenance. As of the time the motion to modify case was heard, Husband was working part-time as a radio programmer and announcer making around $6 an hour. Husband also earned around $75 a week giving guitar lessons. At the time Husband filed the motion to modify the decree, he was earning about $1,000 per month.

On August 19, 2004, Husband filed a first amended motion to modify, and on September 9, 2004, Wife filed a cross-motion to modify, asking for attorney fees, a change in the visitation schedule, to require Husband to pay for the children's counseling sessions, and for an increase in child support. On August 22, 2005, the trial court heard both motions to modify and entered a judgment and decree of modification finding that there had been a continuing and substantial change in circumstances. The trial court modified Husband's child support obligation to $600 per month; modified his maintenance obligation to Wife to $200 per month; and

ordered Father to pay 60% of any deductible, co-pay or uninsured medical expenses of the children, and Wife to pay the remaining 40%. In making the modification, the trial court imputed to Husband the ability to earn $2,000 a month and found that Wife was earning approximately $1,240 a month. Wife appeals this judgment of modification.

We review the trial court's modification order to determine whether it is supported by substantial evidence, whether it is against the weight of the evidence, or whether it erroneously applies or declares the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[1] This court defers to the trial court's determinations regarding credibility of witnesses. *Rustemeyer v. Rustemeyer*, 148 S.W.3d 867, 870 (Mo. App. E.D.2004).

Wife raises three points on appeal, all of which focus on the same point. She contends that the trial court erred in modifying the child support, maintenance, and child care and college provisions of the decree because Husband did not show a substantial and continuing change of circumstances. As such we will address them all together.

A dissolution decree is modifiable in regards to child support or maintenance "only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Section 452.370.[2] In order to support an order of modification, there must be detailed evidence that demonstrates the changed circumstances. *Rustemeyer*, 148 S.W.3d at 870; *Selby v. Smith*, 193 S.W.3d 819, 824 (Mo.App. S.D.2006). The financial resources of both parties are considered in

1. *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d), Missouri Rules of Civil Procedure (2006).

2. All references to statutes are to RSMo (2000) unless otherwise noted.

determining whether a change of circumstances has occurred or not. Section 452.370.1. In both child support and maintenance modification, the main issue is whether the changed circumstances are substantial enough and of such a continuing nature so as to make the original decree unreasonable. *Rustemeyer*, 148 S.W.3d at 870–71; *In re Marriage of Stanley*, 793 S.W.2d 487, 488 (Mo.App. E.D. 1990).

In regards to a motion to modify maintenance amount, the general rule is that a sufficient change in circumstances will only be found when the obligor spouse is unable to pay the maintenance at the assigned rate or when the recipient spouse is able to meet his or her reasonable needs with a lesser amount. *Martino v. Martino*, 33 S.W.3d 582, 584 (Mo.App. E.D. 2000). Additionally, the change in circumstances required to modify maintenance must have been unknown and unforeseeable at the time of the original decree. *Rustemeyer*, 148 S.W.3d at 871.

Husband presented evidence that his monthly income had dropped from $15,000 per month at the time of the original decree, to currently $1,000 a month. Two years after the original decree, Husband's father sold the company for which Husband worked, and Husband lost his job. Noting that Husband has a college degree, no known physical disability, and lives free in a home owned by his parents,[3] the trial court imputed an income of $2,000 per month to Husband. Even with the $2,000 in income imputed to him, Husband would be unable to pay the $1,500 per month in child support and $1,000 per month in maintenance. In light of the fact that Husband's income has decreased so significantly that he can no longer pay his obligations under the original decree even with the income imputed to him, we find that a substantial and continuing change in circumstances has occurred so as to make the original decree unreasonable.

In arguing that the trial court erred in modifying Husband's child support obligations, Wife claims that Husband's reduction of income is due solely to voluntary career decisions. The only case Wife cites to in support of her argument that the trial court erred in modifying the child support is *In re Marriage of Stanley*. Wife fails to realize that the court in *Stanley* was faced with substantially different facts than those before us now. In *Stanley*, a husband sought modification of his child support payments based on changed circumstances. 793 S.W.2d 487. The husband argued that changed circumstances existed based on his annual income decreasing from $90,000 to around $53,000. *Id.* at 488. However, the *Stanley* court noted that the husband's decline in income was only a six-month decline and that the decline could be attributed to the husband leaving his old CPA firm and the costs he incurred in forming a new firm. *Id.* at 489. Additionally, the husband in *Stanley* made no showing that he could not meet his own financial needs while continuing to meet his child support obligations. *Id.* Because the husband's departure from his old firm was a voluntary decision, the *Stanley* court held that the husband failed to show circumstances necessitating a change in child support. *Id.*

*Stanley* is distinguishable. In the case at bar, Husband did not voluntarily leave his old job with his father's firm. More-

---

**3.** At the time of the trial for the motion to modify, Husband was undergoing dissolution proceedings with his then wife, Katherine. Apparently Katherine obtained an ex parte order against Husband preventing him from living in the house he purchased with the proceeds from the stock sale.

over, left unmodified, Husband's child support and maintenance obligations would exceed even Husband's imputed income. Unlike in *Stanley*, Husband is not in the process of starting a new business and, therefore, is not faced with the subsequent reduction in income due to the costs of the business.

Having found *Stanley* to be inapplicable, we return to the remainder of Wife's claim that Husband's reduction in income was voluntary. Wife argues that Husband could have maintained his previous level of income if he had looked for employment as a manager of a construction company rather than trying to run his own music business and only seeking employment within the music field. However, Wife presents no evidence of Husband's ability to obtain such employment or of the availability of such employment in Husband's community. Nor does Wife present any evidence that Husband has the necessary management skills for such a position; instead Wife points out that Husband was unable to successfully operate the music business he opened. Additionally, Wife fails to note that generally, courts will not "interfere within the marital relationship to compel spouses to obtain employment which will generate the maximum possible income to support their children, or ... mandate the employment which a spouse is required to take." *Buchholz v. Buchholz*, 166 S.W.3d 146, 153 (Mo.App. S.D.2005). As such, we find no merit in Wife's contention that the child support should not have been modified.

■ In claiming that the trial court erred in modifying Wife's maintenance award, Wife first argues that Husband failed to show that the loss of his job at his father's company was an unknown or unforeseeable event at the time of the original decree. The original decree was in 1997, and Husband lost his job at his father's company two years later, in 1999. Husband testified that it was his father who owned and ran the company, and it was his father who sold the company. Although Husband owned some stock in the company, Husband testified that his father had given him the stock as part of the father's estate planning for Husband. Husband was only a manager in the company and did not choose to sell the company. As such, we find that Husband's job loss was not known or foreseeable at the time of the original decree.

Wife next claims that Husband's reduction in income represents voluntary career decisions, and as such cannot justify a finding that the original decree was unreasonable and that maintenance should be modified. The only support of Wife's position that no changed circumstances occurred, other than the same arguments Wife made regarding no change of circumstances to support the modification of child support, is her reliance on *Rustemeyer* and *Moseley v. Moseley*, 744 S.W.2d 874 (Mo. App. S.D.1988). Both cases are distinguishable from the case at bar.

In *Rustemeyer*, the evidence was that at the time of original decree, the husband was involved in an insurance marketing business and had an annual income of around $300,000. 148 S.W.3d at 869. The husband sought modification of the decree only five months after the original judgment based on a reduction in his income to $48,000. *Id.* at 869, 871. The reduction in income was due to the husband's insurance marketing business losing its primary client. *Id.* at 869. Evidence was presented that the husband had lost over $12,000 gambling and had invested an additional $12,000 in a new business venture. *Id.* at 871. Additionally, the husband had agreed to the provisions of the original decree despite his knowledge that his insurance marketing business was losing its primary

client. *Id.* Lastly, the husband testified that he had sufficient funds to pay his obligations under the original decree. *Id.* The trial court denied his motion to modify his maintenance obligation and on appeal the Eastern District affirmed the denial on the basis that the change in circumstances was known and foreseeable. *Id.*

In *Moseley,* a husband sought to eliminate his maintenance payments based on changed circumstances. 744 S.W.2d at 877. In support of his motion to modify, the husband showed that his annual income had been reduced by $2,500 since the time of the original decree and his monthly expenses had increased by $1,200. *Id.* However, $700 of the increase in expenses was due to debt the husband had voluntarily incurred in order to pay taxes and fix his home. *Id.* The husband had also remarried and included in his expenses the cost of caring for his new wife. *Id.* In discounting the husband's expenses relating to his support of his new wife and the debt incurred by him, the *Moseley* court noted that remarriage was not a ground for decreasing alimony in the absence of children in the subsequent marriage, and that the husband had incurred the extra expenses at his own choosing. *Id.* at 877–78. The court also stated that the wife's status had not changed since the original decree. *Id.* at 878. As such, the court found that the husband had failed to present the requisite proof necessary to justify the elimination of his maintenance obligation. *Id.* at 878–79.

Unlike in *Rustemeyer,* in the case at bar no evidence was presented that Husband had the ability to continue paying the support and maintenance obligations at the level set by the original decree. Also, in *Rustemeyer,* the husband sought modification only five months after the decree and the changed circumstances were known and foreseeable at the time of the original

decree, whereas here the changes occurred more than two years after the original decree and were not foreseeable or known. *Rustemeyer* also contained evidence that the husband had squandered over $12,000 in gambling losses. No evidence was presented that Husband has similarly wasted assets.

*Moseley* is also distinguishable from the case at bar. First, the husband in *Moseley* had only suffered a $2,500 reduction in his annual income, whereas Husband's income has been reduced from around $15,000 per month at the time of the original decree to $1,000 per month. Although the husband in *Moseley* showed an increase in his monthly expenses, much of that increase was discounted by the *Moseley* court as due to the husband's own volition. *Id.* at 878. Furthermore, the husband in *Moseley* was appealing a denial of a complete elimination of his maintenance obligations. Conversely, in the case at bar, Husband was only granted a reduction in his maintenance payments. As such, we find both *Moseley* and *Rustemeyer* inapplicable to the facts before us.

Wife also argues that no changed circumstances occurred because Husband dissipated the $1,000,000 he received as a result of the sale of his father's company. The trial court found that, of the original $1,000,000, Husband spent $312,000 on a house, paid $119,000 to Wife in child support and maintenance, bought a Raymond James account for $16,000, and had assets of a net value of $255,543. As such, the court found $297,457 of the $1,000,000 to be unaccounted for. However, the trial court did not attribute any money towards living expenses for the five years between the sale of the stock and the filing of the motion to modify, nor did the court include any of the costs of starting and running Husband's music business. Wife presents us with no authority to support her claim.

Additionally, Wife presents no evidence showing that Husband dissipated his assets with an intent to avoid his obligations. Wife's failure to cite relevant authority where available or to explain the lack of such authority constitutes an abandonment of the point under Rule 84.04(d).[4] *Gillham v. LaRue,* 136 S.W.3d 852, 862 (Mo. App. S.D.2004). Accordingly, this point is denied.

In the third point of her brief, that the trial court erred in modifying the child care and college provisions of the decree, Wife only refers this Court to her prior argument that a change in circumstances did not exist. Therefore, our prior holdings dispose of this point as well. For the foregoing reasons, this Court finds that based on the record before us, a substantial and continuing change in circumstances did occur such that the trial court did not err in modifying Husband's child support, child care, college, and maintenance obligations. The judgment is affirmed.

BARNEY and LYNCH, JJ., concur.

---

4. All references to rules are to Missouri Rules of Civil Procedure (2006).