## In re the ADOPTION OF F.C., M.C., and D.C., Minor children.

### No. 28826.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 6, 2008.

Rehearing Denied Oct. 28, 2008.

Eric A. Farris, Branson, MO, for appellant.

Joseph L. Hensley, Joplin, MO, for respondent.

DON E. BURRELL, Presiding Judge.

P.S. and J.S. ("Grandparents") are the maternal grandparents of the minor children, F.C., M.C., and D.C. ("the Children"). Grandparents appeal the trial court's judgment denying their petition for adoption and granting, instead, the competing petition for the Children's adoption filed by A.O. ("Foster Father") and B.O. ("Foster Mother") (collectively, "Foster Parents").[1] Grandparents contend: 1) the evidence does not support the trial court's conclusion that adoption of the Children by Foster Parents was in the Children's best interests; and 2) the testimony of the Children's Guardian *ad Litem* ("GAL") should have been stricken because the GAL failed to meet the Missouri Supreme Court Standards for Guardians *ad Litem*. Finding no error, we affirm.

## I. Factual and Procedural Background

■ Viewed in the light most favorable to the judgment, *In re K.R.J.B.*, 228 S.W.3d 611, 613 (Mo.App. S.D.2007); *Lee v. Hiler*, 141 S.W.3d 517, 520 (Mo.App. S.D.2004), the relevant facts are as follows.[2] The Children were born to P.C.

---

1. The trial court entered an order consolidating these originally separate adoption cases into one single case at the request of the parties. *See In re K.W.*, 32 S.W.3d 674, 675–76 (Mo.App. W.D.2000) (actual consolidation of cases required or unsuccessful competing petitioner has no standing to appeal).

2. Unfortunately, Grandparents' Statement of Facts was not helpful in making this determination. Our briefing rules require that an

and W.C., Grandparents' daughter and former son-in-law. On December 7, 2002, upon a showing of probable cause to believe they had been abused or neglected, the Children (who were two, four, and six years old at the time) were taken from their parents and placed into protective custody. The Children were initially split apart and placed in separate foster homes. One week later, the Children were moved from their separate locations and placed together in Foster Parents' home when Foster Parents volunteered to take them. Foster Parents were familiar with the Children and their parents because the family had participated in the "Head Start" program where Foster Mother was a Family Resource Specialist.

At the time the Children were removed from their parents' custody, Grandparents lived two hours away in Branson, Missouri but also owned a home in Granby, Missouri that was located approximately thirty minutes from Foster Parents' home. Grandparents' Branson home would have needed to be remodeled to create additional bedrooms before the Children would have been able to stay there. At the time of the Children's removal, Grandparents did not remodel their Branson home or move to their Granby home (which was apparently configured in an acceptable manner) in any attempt to have the Children placed with them. Grandparents did not initially participate in Family Support Team meetings held by the Children's Division. When Grandparents began to attend these meetings, their purpose and goal was to support their daughter's efforts to regain custody of the Children.

Sometime in 2003, Grandparents began to act independently of their daughter and were successful in obtaining a court-ordered schedule of visitation with the Children. The length and conditions of this visitation varied over time but began with daytime visits and progressed to overnight and weekend visits.

Attempts to reunify the Children with a natural parent were not successful, and the trial court ultimately terminated the natural parents' parental rights *via* a judgment entered January 12, 2006. The Children's biological mother appealed the termination of her parental rights. After this Court affirmed the judgment,[3] Foster Parents and Grandparents filed separate petitions for adoption within two weeks of each other and the cases were consolidated. By the time of the trial on the consolidated petitions for adoption, the Children had lived with Foster Parents for approximately four years and nine months.

The trial court heard evidence on the adoption petitions over several days in August and September of 2007. The Children's therapist, the Children's Division, and the GAL all recommended that the Children be adopted by Foster Parents. A psychologist hired by the Children's Division conducted an evaluation to determine the level of bonding between the Children and each of the competing parties

---

appellant's "statement of facts shall be a *fair and concise* statement of the facts relevant to the questions presented for determination *without argument*. Such statement of facts may be followed by a resume of the testimony of each witness relevant to the points presented." Rule 84.04(c) (emphasis added). Grandparents' Statement of Facts is argumentative and fails to mention many of the relevant facts, particularly those that are favorable to the trial court's judgment. While the failure to comply with Rule 84.04(c) is grounds to dismiss the appeal, *In re Gerhard,* 34 S.W.3d 305, 307 (Mo.App. S.D.2001), we choose to exercise our discretion to determine the case on its merits in spite of the breach.

Unless otherwise indicated, all references to rules are to Missouri Court Rules (2008).

3. *In re F.C.,* 211 S.W.3d 680 (Mo.App. S.D. 2007). The biological father did not appeal.

but did not make a recommendation as to whose adoption petition should be granted. He did, however, conclude that the Children were bonded with both Foster Parents and Grandparents.

### A. Foster Parents' Circumstances

Foster Father and Foster Mother were respectively forty-five and forty-four years of age at the time of trial. Foster Father has a college education and has been employed as an editor for a newspaper for over twenty years. Foster Mother works approximately twenty-five hours per week as a Family Resource Specialist with "Head Start," a program designed to enhance early childhood development. Foster Parents' income is approximately $84,400 to $90,600 per year. Insurance for the children would be provided through Foster Father's employer.

Foster Parents live in a three bedroom, two-and-a-half bath, single-family home. The home is located on 1.6 acres in Webb City, Missouri. Foster Parents have a biological son who is a twenty-two-year-old college student. He no longer resides primarily in the family home but stays there periodically on weekends and during school breaks. Foster Parents have been married for twenty-three years.

### B. Grandparents' Circumstances

Grandparents were both sixty-six years old at the time of trial. Grandmother has a master's degree and teaches reading recovery and early literacy to the lowest performing child in each first grade class. Grandfather has a college education and worked twenty-seven years for an oil field service company before retiring. Grandparents are also members of a musical band that performs approximately nine months a year for two hours per week at a Branson resort property. Grandparents' income is approximately $95,000 to $98,000 per year. Insurance for the children

would be provided through Grandmother's employment. Grandparents' remodeled Branson home is approximately 2,500 square feet and now has three bedrooms.

### II. Standard of Review

"[T]he paramount goal in an adoption proceeding is the best interests of the child." *In re C.D.G.*, 108 S.W.3d 669, 674 (Mo.App. W.D.2002). "We will affirm the judgment below, unless the judgment has no substantial evidence to support it, the judgment is against the weight of the evidence, or the trial court erroneously declared or applied the law." *Id.* A judgment is presumed correct and we accept as true the evidence and inferences favorable to the judgment and disregard all contrary evidence and inferences. *In re M.F.*, 1 S.W.3d 524, 532 (Mo.App. W.D.1999); *Lee*, 141 S.W.3d at 520. "Greater deference is granted to a trial court's determination in custody and adoption proceedings than in other cases." *In re K.K.J.*, 984 S.W.2d 548, 552 (Mo.App. S.D.1999). Credibility of the witnesses and the weight given to their testimony is for the trial court's determination as we defer to the trial judge's superior opportunity to assess such credibility. *Lee*, 141 S.W.3d at 520; *Keller v. Friendly Ford, Inc.*, 782 S.W.2d 170, 173 (Mo.App. S.D.1990); *Harris v. Lynch*, 940 S.W.2d 42, 45 (Mo.App. E.D.1997).

### III. Analysis

Although neither party requested findings of fact and conclusions of law, the trial court's judgment contained the following relevant findings:

The Children's Division and the Guardian ad Litem recommended permanency for the children through adoption by the [Foster Parents], citing their length of time in the [Foster Parents'] home and the bond they have built with the children. This Court simply cannot ignore

the years of foster care that the [Foster Parents] have endured to get to this point and the strength of the bond between the children and their foster Mom and Dad. Though any result entered by the Court will naturally be upsetting to one of the couples in this case, as both love the children dearly, the Court must concern itself with what is best for the children. Therefore, based on the findings above, the Court denies the [Grandparents'] Petition and finds in favor of [Foster Parents].

Because no request for specific findings of fact was made, "[a]ll fact issues upon which no specific findings [were] made shall be considered as having been found in accordance with the result reached." Rule 73.01(c); *Zaharopoulos v. Sprenger*, 605 S.W.2d 143, 145 (Mo.App. E.D.1980) ("the judgment will be affirmed if it is correct on any reasonable theory supported by the evidence.").

### *Point One: Best Interests Determination*

In Grandparents' first point on appeal, they argue the trial court erred in finding that the best interests of the Children would be served by granting the Foster Parents' petition for adoption because the Grandparents presented substantial and sufficient evidence at trial that they were the party best suited to serve as the Children's adoptive parents. Grandparents cite several factors in support of this posi-

tion and also note several "concerns" about the Foster Parents they allege the trial court did not properly weigh. Further, Grandparents argue that the trial court "based its decision solely on the length of time that the children have spent in the custody of the [Foster Parents]." [4]

■■■ "There are innumerable factors that may be considered in determining whether an adoptive placement is in the children's best interests." *In re C.D.G.*, 108 S.W.3d at 677. "With the possible exception of a strong negative factor, no one factor is determinative of the issue." *Id.* "As such, the best-interests analysis is very fact-intensive and may turn on very subtle factors." *Id.*

Grandparents argue that their level of income, biological relationship, good and stable home, degree of bonding with the Children, age and health, degree of training, education, combined intelligence quotient (IQ), and level of commitment all favor a finding that the best interests of the Children would best be served by allowing Grandparents to be their adoptive parents. In making this argument, Grandparents fail to recognize that many of these same factors would also support the trial court's decision to allow Foster Parents to adopt the Children. Further, whether the "concerns" about the Foster Parents that the trial court allegedly failed to properly weigh would constitute a "strong negative factor" depends on

---

4. This contention is raised for the first time in the argument section of Grandparents' brief and is not contained in their Point Relied On. Rule 84.04(e) states in relevant part that "[t]he argument shall be limited to those errors included in the 'Points Relied On.'" Grandparents' Point Relied On also spans nearly two and a half pages with approximately two pages of references to the record. "Any reference to the record shall be limited to the ultimate facts necessary to inform the appellate court and the other parties of the issues. Detailed evidentiary facts shall not be included." Rule 84.04(d)(4). Both of Grandparents' Points Relied On also list more than four cases upon which the point relies. Rule 84.04(d)(5) states the list of cases is "not to exceed four." Because the best interests of minor children are involved, and we believe we have a sufficient understanding of Grandparents' contentions, we point out these briefing deficiencies but will proceed with a review of the case on its merits.

whether the trial court believed they actually existed. The testimony on these matters was in controversy and thus involved credibility determinations that were the trial court's to make. We assume the trial court made those credibility determinations in a fashion consistent with its judgment. *Warren v. Tom,* 946 S.W.2d 754, 759 (Mo.App. S.D.1997).

While Grandparents' income was somewhat higher than that of Foster Parents', both parties' income either met or exceeded their monthly expenses. Grandparents rightly note their biological relationship to the Children as a factor the trial court should consider. While there is no overriding preference for adoptive placement with biological relatives, such relationships are nevertheless significant considerations in determining what is in the children's best interests. *See In re C.D.G.,* 108 S.W.3d at 677; *Matter of M.D.H.,* 595 S.W.2d 448, 451 (Mo.App. S.D.1980). What Grandparents fail to consider, however, is that the trial court may also have considered their biological relationship in determining whether Grandparents might allow the Children to have contact with their biological mother (Grandparents' daughter) in a manner that would not be in the Children's best interests. *See In re T.J.D.,* 186 S.W.3d 488, 496 (Mo.App. S.D.2006) (finding that "the 'future contact with biological parents' factor weigh[ed] heavily against Grandfather and favorably to the Foster Parents."). Because no findings of fact were made on this issue, we must construe it as having been found in accordance with the trial court's decision. Rule 73.01(c).

Grandparents point to their ability to provide a good and stable home, but this was also true of Foster Parents. Both parties had home studies that were approved by the Children's Division.[5] Grandparents rightly point out that the Children have a strong and positive bond with them. However, the psychologist who testified to the existence of that bond went on to testify that the Children were also bonded to Foster Parents. Moreover, he testified that the nature of the Children's bonding was to Foster Parents as "parents" and to Grandparents as "grandparents." The Children's therapist also testified that the Children were bonded not only with Foster Parents, but also with Foster Parents' son.

Grandparents refer to their age and excellent health, degree of training in childcare issues, and advanced education as factors that would weigh in their favor. Again, Grandparents fail to appreciate that Foster Parents are over twenty years younger, are also in excellent health, have received equivalent—if not more—training in child-care issues, and are also well educated. Grandparents argue that they have higher IQ scores than Foster Parents and contend that Foster Parents are less committed to these Children because they have incurred fewer out-of-pocket expenses in their attempt to adopt the Children. A review of the record shows that both of these parties love and are committed to these children, and Grandparents have failed to argue how their higher IQ scores would be of particular benefit to the Children.

Grandparents argue the trial court erred because it based its decision *solely* on the length of time the children had spent in the custody of Foster Parents. As earlier noted, the amount of time the Children had spent living with Foster Parents was

---

5. Grandparents' Branson home was approved after it was remodeled to create additional bedrooms.

obviously significant to the trial court based on its express statement to that effect, but Grandparents have failed to cite to any evidence that would support their conclusion that it is the *only* evidence the trial court considered.

Viewing the evidence in the light most favorable to the judgment, as we must, we cannot find that the trial court's decision was against the weight of the evidence. Instead, there is substantial evidence to support it and no mistake of law appears. Point one is denied.

### Point Two: The Guardian ad Litem

In Grandparents' second point on appeal, they argue the trial court abused its discretion when it overruled Grandparents' motion to strike the testimony of and discharge the GAL. Grandparents allege the GAL's actions were in violation of Section 453.025.4[6] and the Missouri Supreme Court's Standards for Guardians *ad Litem* because: 1) the fact that she held the same opinion as to who should adopt the Children both before and after the competing petitions for their adoption were filed demonstrated that she was not objective and neutral as required; 2) the GAL never met with the Children; and 3) the GAL failed to complete the required six hours of annual specialized Guardian *ad Litem* training and file with the court the required affidavit so attesting.

■■ At trial, Grandparents made a motion to strike the testimony of the GAL after she had testified. Grandparents argued at that time that she did not meet the standard of objectivity required by the Guardian *ad Litem* rules because she had "held the same opinion as to a preference in this adoption since the June of 2004 staffing meeting" and "could not identify the last time she visited with [the Children]." On appeal, Grandparents now attempt to raise two additional grounds: 1) that the GAL's "actions and omissions" were in violation of the requirements of Section 453.025.4; and 2) that she did not meet the Missouri Supreme Court's Standards for Guardians *ad Litem*. These new objections cannot be raised for the first time on appeal.[7] Rule 84.13; Section 512.160, RSMo (2000); *Mo. Pub. Serv. Co. v. Juergens*, 760 S.W.2d 105, 106 (Mo. 1988); *Rolla 31 Sch. Dist. v. State*, 837 S.W.2d 1, 7 (Mo.1992) ("It is incumbent upon one seeking relief to ensure that the trial court rules upon all requests before it in order to preserve an erroneous ruling for appeal. Allegations of error that have not been presented to or expressly decided by the trial court shall not be considered on appeal."). Because these additional claims of error were not properly preserved for our review, they will not be addressed.

■■ As to Grandparents' objections that were raised at trial, we first note that

6. Unless otherwise indicated, all statutory references are to RSMo Cum.Supp (2006).

7. The issue of whether or not the GAL had met the Missouri Supreme Court Standards for Guardians *ad Litem* was mentioned in a post-trial letter Grandparents' counsel addressed to the Circuit Clerk (which indicated that a copy was being sent to the trial judge) that requested a review of the GAL's annual affidavits of compliance with those standards. Grandparents did not request that the evidence be re-opened or file any other post-trial motions. Grandparents do not attempt to show how such a procedure might be sufficient to preserve this claim of error for appellate review. Section 453.025.4(3) states that a Guardian *ad Litem* shall "[a]scertain the child's wishes, feelings and attitudes regarding the adoption by interviewing persons with knowledge of the child, and *if appropriate,* to meet with the child." (emphasis added). This particular portion of the statute is fairly implicated by Grandparents' objection that the GAL did not meet with the Children and will be addressed to that extent.

Grandparents fail to cite any authority for their contention that the GAL was required by law to be "objective and neutral." To the contrary, the applicable statute requires a Guardian *ad Litem* to "[b]e the legal *advocate* for the best interest of the party he is appointed to represent...." Section 453.025.4(1) (emphasis added). Advocacy is not neutrality. In fact, as Grandparents' brief correctly points out, a Guardian *ad Litem's* duty is to "'jealously guard[] the rights of infants.'" (*quoting Spotts v. Spotts,* 331 Mo. 917, 55 S.W.2d 977, 981 (1932)).

In regard to being objective, we assume Grandparents suggest it in the sense of "expressing or dealing with facts or conditions as perceived without distortion by personal feelings, prejudices, or interpretations." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 855 (11th ed.2005). The comment to Standard 2.0 of the Missouri Supreme Court's Standards with Comments for Guardians *ad Litem* in Missouri Juvenile and Family Court Matters ("the Standards") cited by Grandparents says a Guardian *ad Litem* "must maintain an objectivity that preserves a clear focus on the child's best interests."[8] STANDARDS WITH COMMENTS FOR GUARDIANS AD LITEM IN MO. JUVENILE & FAMILY COURT MATTERS 4, Standard 2.0 at 4 (1996), http://www.courts.mo.gov/file/Guardian%20ad%20litem%20Standards.pdf. Although the ability to view facts and situations "objectively" (as defined above) is an important skill for a Guardian *ad Litem* (as for any advocate) to develop, perhaps a more fitting definition of "objective" in this context is the Merriam–Webster's alternative definition: "something toward which effort is directed; a strategic position to be attained or a

purpose to be achieved...." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 855 (11th ed.2005). In any event, Grandparents fail to cite any authority supporting the proposition that a consistent position or recommendation over time amounts to a *de facto* lack of objectivity under either definition. The failure to cite relevant authority or explain the lack thereof constitutes an abandonment of the point under Rule 84.04(d). *In re Clinton,* 231 S.W.3d 317, 323 (Mo.App. S.D.2007). Grandparents also fail to show, in the context of this case, why the GAL's consistent recommendation that the Children be adopted by Foster Parents is not supported by the evidence as seen in the light most favorable to the judgment.

In regard to Grandparents' allegation that the GAL did not personally interview the Children, the GAL testified that she had met with the Children on a few occasions and that "I'm also able, as guardian ad litem, to rely on reports and other sources of information. And all indication is that the majority of the time the children have indicated that they want to remain with [Foster Parents]." As earlier indicated, Section 453.025.4(3) gives a Guardian *ad Litem* discretion in deciding whether or not to directly interview the child whose best interests he or she is appointed to assert and protect. More importantly, Grandparents have failed to point out why any failure by the GAL to personally interview the Children in this case would constitute an abuse of that discretion or how any such failure resulted in prejudice. "A judgment for error is not to be reversed unless the complainant suffered injury or prejudice." *Miles v. Dennis,* 853 S.W.2d 406, 409 (Mo.App. W.D.

---

8. Although Grandparents' Brief asserts that the Standards are mandatory, under Section 484.302 each circuit court has until July 1, 2011 to fully implement them. H.B. 1570, 94th. Gen. Assemb., 2d Reg. Sess. (Mo.2008). No evidence was presented that the circuit containing Jasper County has adopted the Standards.

1993). In fact, the trial court could have stricken the GAL's testimony as requested by Grandparents and its decision to grant Foster Parents' petition for adoption would still have been supported by substantial evidence. Point two is also denied and the judgment of the trial court is affirmed.

PARRISH and RAHMEYER, JJ., Concur.